2007 WY 29

**Robert DETTLOFF, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 05–217.

Supreme Court of Wyoming.

Feb. 16, 2007.

Representing Appellant: Ken Koski, State Public Defender, PDP; Donna D. Domonkos, Appellate Counsel; Tina N. Kerin, Senior Assistant Appellate Counsel. Argument by Ms. Kerin.

Representing Appellee: Patrick J. Crank, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; James Michael Causey, Assistant Attorney General. Argument by Mr. Causey.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1]   Robert Dettloff was convicted by a jury of possession with intent to deliver methamphetamine, possession of methamphetamine, possession of marijuana and possession of oxycodone.[1] He appeals claiming defense counsel rendered ineffective assistance in representing him on his motion to suppress and the trial court erred in denying the motion; insufficient evidence was presented to support his convictions; and the district court erred in admitting uncharged misconduct evidence. We find no error and affirm the convictions.

## ISSUES

[¶ 2]   Mr. Dettloff presents the following issues for this Court's consideration:

I.   Was defense counsel ineffective in representing appellant with regard to the motion to suppress evidence and did the trial court err in denying the motion?

II.   Was there insufficient evidence to support appellant's convictions, and appellant denied his right to a unanimous jury verdict thereby?

III.   Did the trial court err in admission of uncharged misconduct evidence and argument concerning same?

---

1.   Oxycodone is a pharmaceutical pain reliever that comes in capsule or tablet form.  It is a Schedule II controlled substance because it is subject to abuse.

The State phrases the issues substantially as Mr. Dettloff presented them.

## FACTS

[¶ 3]   On August 30, 2004, at approximately 9:45 p.m. Dan Slattery and Justin Lindberg, patrolmen for the Town of Mills, Wyoming, observed two vehicles at a stop sign on Boles Road in Mills. One of the vehicles, a grey Mercedes, turned north onto Chamberlin Road. The other vehicle, a brown Lincoln, followed the Mercedes through the stop sign without stopping and turned north on Chamberlin Road as well. The patrolmen followed the vehicles and observed that they appeared to be swerving.

[¶ 4]   The vehicles pulled into a Subway restaurant parking lot. The patrolmen drove beyond the Subway, turned and came back. The Mercedes and the Lincoln were parked in the lot and Mr. Dettloff was inside the Subway watching the patrol car. Patrolman Lindberg got out of the patrol car. As he did so, Mr. Dettloff moved toward the back of the store where he appeared to try the office and bathroom doors and then turned toward the rear exit. Patrolman Slattery drove around to the back of the building. Mr. Dettloff was just coming out the door. When he saw the patrol car, he turned and went back inside.

[¶ 5]   Patrolman Lindberg walked back around to the front and entered the building. Mr. Dettloff was standing at the counter next to a young woman. Patrolman Lindberg asked the woman if she was with Mr. Dettloff. She responded negatively and stepped away. Mr. Dettloff acted nervous and agitated, and kept putting his hands in and out of his pockets. As he was speaking with Mr. Dettloff, Patrolman Lindberg noticed a clip knife sticking out of one of Mr. Dettloff's pockets. The patrolman reached over and took it and discovered it was a switch blade. He informed Mr. Dettloff it was a violation of a town ordinance to carry a concealed weapon.

[¶ 6]   Patrolman Slattery asked Mr. Dettloff his name. Mr. Dettloff responded that he did not want to tell them his name. The patrolmen advised him if he did not tell them his name they would arrest him for interfering with a peace officer. Patrolman Lindberg reached over in an attempt to handcuff Mr. Dettloff. He pulled away and ran toward the door. The patrolmen went after him, grabbed him, took him to the ground and placed him under arrest. Patrolman Slattery searched Mr. Dettloff and found $549 in cash and a cigarette lighter.

[¶ 7]   Mr. Dettloff told the patrolmen he had been driving the Mercedes. His companions were identified as Sterling Freeman, the driver of the Lincoln, and D.S., a fifteen year old minor. They confirmed Mr. Dettloff had been driving the Mercedes. The patrolmen searched the Mercedes and found a pencil case containing three packages of methamphetamine in quantities of 7 grams, 1 gram and .2 grams; a package containing 3.1 grams of marijuana; an oxycodone capsule; and drug paraphernalia.

[¶ 8]   The patrolmen ascertained the Mercedes belonged to Penny Strickland. After searching the vehicle, they contacted Ms. Strickland and notified her that the car was in the Subway parking lot. She stated the car had been in storage for two years and she had asked D.S. and Mr. Freeman to get it out of storage and bring it to her. The patrolmen asked Ms. Strickland if the methamphetamine found in the Mercedes was hers and she said it was not. The patrolmen left the vehicle in the parking lot for Ms. Strickland to retrieve.

[¶ 9]   Mr. Dettloff was charged with felony possession of methamphetamine with intent to deliver in violation of Wyo. Stat. Ann. § 35–7–1031(a)(i) (LexisNexis 2005); felony possession of methamphetamine in a powder or crystalline form exceeding three grams in violation of § 35–7–1031(c)(ii); misdemeanor possession of marijuana in violation of § 35–7–1031(c)(i); and misdemeanor possession of oxycodone in violation of § 35–7–1016(b)(i)(P) (LexisNexis 2005). Prior to trial, defense counsel filed a motion to suppress the evidence seized in the search of the Mercedes. Following a hearing, the district court denied the motion.

[¶ 10]   During the trial, the State solicited testimony from Mr. Freeman that he, D.S. and Mr. Dettloff smoked marijuana supplied

by Mr. Dettloff earlier in the day Mr. Dettloff was arrested. After a two day trial, the jury returned a verdict of guilty on all four counts. The district court sentenced Mr. Dettloff to concurrent terms of eight to twelve years in the Wyoming State Penitentiary for possession of methamphetamine with intent to deliver; four to six years in the penitentiary for possession of methamphetamine; one year in the Natrona County Detention Center for possession of marijuana; and one year in the detention center for possession of oxycodone.

## DISCUSSION

### 1. Denial of Motion to Suppress

[¶ 11]   In his first issue, Mr. Dettloff claims defense counsel ineffectively represented him during the suppression motion proceedings and the district court erred in denying the motion. We address these issues separately, beginning with the claimed error in denial of the suppression motion. The following standards govern our review of alleged error in denying a motion to suppress:

> Rulings on the admissibility of evidence are within the sound discretion of the trial court. We will not disturb such rulings absent a clear abuse of discretion. An abuse of discretion occurs when it is shown the trial court reasonably could not have concluded as it did. Factual findings made by a trial court considering a motion to suppress will not be disturbed unless the findings are clearly erroneous. Because the trial court has the opportunity to hear the evidence, assess witness credibility, and draw the necessary inferences, deductions, and conclusions, we view the evidence in the light most favorable to the trial court's determination. Whether an unreasonable search or seizure occurred in violation of constitutional rights presents a question of law and is reviewed de novo.

*O'Boyle v. State,* 2005 WY 83, ¶ 18, 117 P.3d 401, 407 (Wyo.2005) (citations omitted).

[¶ 12]   In its order denying the suppression motion, the district court found: 1) Mr. Dettloff lacked standing to challenge the search of the Mercedes; 2) the search of the

Mercedes was incident to a lawful arrest and in accord with *Thornton v. United States,* 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004); and, 3) the police had probable cause to believe the Mercedes contained evidence of a crime or contraband and to search it without a warrant in accordance with *Borgwardt v. State,* 946 P.2d 805 (Wyo.1997). Mr. Dettloff asserts each of these conclusions was erroneous.

[¶ 13]   With regard to the first issue, Mr. Dettloff contends he had standing to challenge the search because Ms. Strickland authorized him to be in possession of and drive the vehicle, giving him a reasonable expectation of privacy in the vehicle. He further asserts he had standing because he was the subject of the lawful arrest giving rise to the vehicle search. The State contends the district court correctly concluded Mr. Dettloff did not have standing to challenge the search because he did not have a reasonable expectation of privacy in a vehicle owned by someone else and because he disavowed ownership of the pencil box in which the evidence was found.

[¶ 14]   We have said:

> A defendant may challenge a search as being unconstitutional only if he can demonstrate that he had a reasonable expectation of privacy in the property searched. The defendant must show "both an actual subjective expectation of privacy and a reasonable expectation of privacy that society is prepared to recognize." There are four factors that courts consider to determine whether an individual possesses a reasonable expectation of privacy in the property searched:
>
> (1) the precautions taken in order to maintain one's privacy; (2) the likely intent of the drafters of the United States and Wyoming Constitutions; (3) the property rights a claimant possesses in the invaded area; (4) the legitimacy of the individual's possession of or presence in the property which was searched or seized.

*Andrews v. State,* 2002 WY 28, ¶ 20, 40 P.3d 708, 712–13 (Wyo.2002) (citations omitted).

[¶ 15] We have applied these principles in other cases with varying results depending upon the particular facts presented. In *Parkhurst v. State,* 628 P.2d 1369, 1374 (Wyo.1981), we held the vehicle owner's brother had standing to challenge the search because he was present in the vehicle as the owner's guest. In *Putnam v. State,* 995 P.2d 632, 636 (Wyo.2000), we held the defendant did not have standing to challenge a vehicle search because he did not have permission to use or possess the vehicle at the time of the search. In *Andrews,* we held the defendant did not have standing to challenge the search of a duffle bag because he disavowed ownership of the bag and its contents at the time of the search.

[¶ 16] In claiming that he had standing to challenge the vehicle search, Mr. Dettloff points to evidence showing the owner of the vehicle, Ms. Strickland, asked D.S., Mr. Freeman and Mr. Dettloff to go to the storage unit and retrieve the Mercedes. However, he points to no evidence showing Ms. Strickland gave him permission to drive the vehicle. Mr. Freeman was also licensed to drive a motor vehicle, the three-some drove to the storage unit in Mr. Dettloff's Lincoln and no evidence was presented as to how or why Mr. Dettloff ended up driving the Mercedes. The district court's conclusion that Mr. Dettloff did not have standing to challenge the search was correct. Mr. Dettloff failed to carry his burden of proving that he was legitimately present in the vehicle. Mr. Dettloff's lack of standing to challenge the search is determinative of this issue making consideration of the district court's other rulings on the suppression motion unnecessary.

### 2. Ineffective Assistance of Counsel

[¶ 17] Mr. Dettloff claims defense counsel was ineffective because she failed to argue that the vehicle search violated Art. 1, § 4 of the Wyoming Constitution. An appellant claiming ineffective assistance of counsel must demonstrate on the record that: 1) counsel's performance was deficient and 2) prejudice resulted. *Hirsch v. State,* 2006 WY 66, ¶ 15, 135 P.3d 586, 594 (Wyo. 2006), citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674

(1984). Both components of the ineffectiveness inquiry are mixed questions of law and fact. *Strickland,* 466 U.S. at 698, 104 S.Ct. 2052. Our review, therefore, is *de novo.* *United States v. Owens,* 882 F.2d 1493, fn. 16 (10th Cir.1989).

[¶ 18] When reviewing a claim of ineffective assistance of counsel, the paramount determination is whether, in light of all the circumstances, trial counsel's acts or omissions were outside the wide range of professionally competent assistance. *Hirsch,* ¶ 15, 135 P.3d at 593. We indulge a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* Under the two-prong standard articulated in *Strickland,* to warrant reversal on a claim of ineffective assistance of counsel, an appellant must demonstrate that his counsel failed to render such assistance as would have been offered by a reasonably competent attorney and that counsel's deficiency prejudiced the defense of the case. *Id.* "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.,* quoting *Strickland,* 466 U.S. at 686, 104 S.Ct. 2052.

[¶ 19] The burden of proving that counsel was ineffective rests entirely on the appellant. *Martinez v. State,* 2006 WY 20, ¶ 23, 128 P.3d 652, 663 (Wyo.2006). The appellant must also demonstrate the existence of a reasonable probability that, absent the deficiency in counsel's performance, the result of the proceedings would have been different. *Id.* A failure to make the required showing of either deficient performance or sufficient prejudice defeats an ineffectiveness claim. *Id.* An ineffectiveness claim may be disposed of solely on the ground of lack of sufficient prejudice. *Id.* When ineffective assistance of counsel is alleged due to counsel's failure to file a suppression motion, prejudice to a defendant can only be shown where, had the motion been made, it would have been granted, and had the evidence been suppressed, only a limited amount of evidence remained to support a conviction. *Grissom*

*v. State,* 2005 WY 132, ¶ 12, 121 P.3d 127, 132–33 (Wyo.2005)

[¶ 20] Mr. Dettloff argues defense counsel was ineffective in failing to present a particular argument in support of the motion to suppress. Under *Grissom* and our other precedent, he must show that presentation of the argument would have resulted in suppression of the evidence. We have concluded that the district court correctly ruled Mr. Dettloff did not have standing to challenge the vehicle search, and that conclusion applies to the constitutionality of the search under the state and United States constitutions. Because Mr. Dettloff did not have standing, he cannot show that presentation of an adequate state constitutional claim would have resulted in suppression of the evidence. Therefore, his claim of ineffective assistance of counsel must fail.

### 3. Sufficiency of the Evidence

[¶ 21] Mr. Dettloff claims there was insufficient evidence to support his convictions. His claim in this regard is twofold. First, he claims other individuals had access to the Mercedes and there was no evidence linking the drugs found in the vehicle to him. Second, he claims a jury instruction given over his objection allowed the jury to convict him on the basis of two alternatives and there was not sufficient evidence to support both alternatives.

[¶ 22] When reviewing the sufficiency of the evidence, this Court accepts as true the State's evidence and affords it those inferences which may be reasonably and fairly drawn from it. *Jones v. State,* 2006 WY 40, ¶ 9, 132 P.3d 162, 165 (Wyo.2006). We do not consider conflicting evidence or inferences that can be drawn from such evidence. *Id.* Our duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did. *Id.*

[¶ 23] Applying these standards, we review the evidence the State presented, and inferences that may be drawn from it, to determine whether a reasonable jury could have concluded the State proved the charges against Mr. Dettloff beyond a reasonable doubt. After a careful review of the record, we have no doubt the evidence the State presented met that standard.

[¶ 24] The patrolmen testified the Mercedes and the Lincoln were weaving as they headed north on Chamberlin Road. As the patrolmen followed in a marked patrol car, it appeared "there was something going on with that Mercedes and that the Lincoln was trying to block our [the patrolmen's] view of the Mercedes so that we couldn't see something in that vehicle." When the patrolmen pulled into the Subway parking lot, the Mercedes and Lincoln were parked and Mr. Dettloff was watching them from inside the building. Patrolman Lindberg started to get out of the patrol car in front of the Subway and Mr. Dettloff headed toward the back of the Subway. The patrolmen drove around to the back as Mr. Dettloff was coming out the door. Upon seeing the patrol car, Mr. Dettloff went back inside. These evasive movements combined with the patrolmen's prior observations of the Lincoln running the stop sign and appearing to run interference for the Mercedes and both vehicles weaving gave rise to a reasonable suspicion of illegal activity.

[¶ 25] When Patrolman Lindberg approached Mr. Dettloff, he appeared "extremely nervous and agitated," "fidgety," "he couldn't keep still," "he kept his hands moving around, in and out of his pockets." His speech was slurred and very hard to understand. Both patrolmen testified Mr. Dettloff's behavior was consistent with someone under the influence of methamphetamine and they believed at that point they had a possible driver under the influence of a controlled substance.

[¶ 26] After his arrest, Mr. Dettloff informed the patrolmen he had been driving the Mercedes. A search of Mr. Dettloff's person revealed he was carrying over $500 in cash. Patrolman Slattery testified he found the pencil case containing the controlled substances and paraphernalia under the front seat on the driver's side of the Mercedes where Mr. Dettloff had been seated.

[¶ 27] To refute any claim the controlled substances found in the Mercedes were left in the vehicle when it was put in storage two

years before, the State presented testimony from a forensic chemist that Tetrahydrocannabinol (THC), the active ingredient in marijuana, degrades over time and would not be found in marijuana more than a year old. The witness testified in his opinion the marijuana found in the Mercedes was less than a year old. The State also presented Mr. Freeman's testimony that Mr. Dettloff had possessed and used marijuana earlier in the day of his arrest.

[¶ 28] The State also presented the expert testimony of a drug task force agent who testified that in his opinion the person who possessed the items seized was engaged in drug trafficking. Specifically, he testified the scales, packaging material, and quantities of methamphetamine found in the pencil case in the Mercedes and the amount of money Mr. Dettloff was carrying were indicative of someone engaged in drug trafficking. The witness testified the other items seized were indicative of someone engaged in using methamphetamine, specifically, the lighter found on Mr. Dettloff and the spoons and syringes found in the Mercedes.

[¶ 29] From the evidence the State presented, we conclude a reasonable inference can be made that Mr. Dettloff was under the influence of methamphetamine when he was arrested and had used and possessed marijuana prior to his arrest the same day. A reasonable inference also can be made that the methamphetamine, marijuana, oxycodone and drug paraphernalia found in the pencil case in the Mercedes under the seat in which Mr. Dettloff had been sitting just prior to entering the Subway was his. Additionally, a reasonable inference can be made from the quantities of methamphetamine, the paraphernalia and the amount of cash Mr. Dettloff was carrying that he possessed the methamphetamine with the intent to deliver it to others. We hold sufficient evidence was presented from which a jury could conclude beyond a reasonable doubt that Mr. Dettloff committed the offenses charged.

[¶ 30] Mr. Dettloff cites numerous cases in his brief for the proposition that evidence showing drugs were found in a place where the defendant was not the sole occupant is insufficient to support a controlled sub-

stances conviction. *See, e.g., Cordero v. State,* 589 So.2d 407 (Fla.Dist.Ct.App.1991); *In the Interest of E.H.,* 579 So.2d 364 (Fla. App. 4th Dist.1991); *Johnson v. State,* 444 So.2d 891 (Ala.Cr.App.1983). Unlike the present case, however, none of the cases he cites involved other facts from which the defendant's possession could be inferred. Specifically, none of the cases cited involved evidence that the defendant was under the influence of a controlled substance, smoked marijuana earlier in the day, attempted to evade law enforcement, changed his story several times, was carrying a large amount of cash, refused to identify himself, and ran when law enforcement attempted to arrest him.

[¶ 31] Mr. Dettloff's next contention is that the following instruction, to which he objected, allowed the jury to convict him on the basis of two alternatives and there was not sufficient evidence to support both alternatives. Instruction 19 stated as follows:

YOU ARE INSTRUCTED that "possession," as that term is used in this case, may be of two kinds: actual possession and constructive possession. A person who knowingly has direct physical control over a thing at a given time is in actual possession of it.

A person who, although not in actual possession, knowingly has both the power and the intention, at a given time, to exercise dominion or control over a thing, either directly or through another person or person, is in constructive possession of it.

You may find that the element of possession, as that term is used in these instructions, is present if you find beyond a reasonable doubt that the defendant had actual or constructive possession, either alone or jointly with others.

Citing *Bush v. State,* 908 P.2d 963 (Wyo. 1995) and its progeny, Mr. Dettloff claims the instruction improperly contained the alternative elements of actual and constructive possession upon which the jury could base his conviction.

[¶ 32] We recently addressed precisely the same claim in *Doherty v. State,* 2006 WY

39, ¶ 16, 131 P.3d 963, 969 (Wyo.2006). We said:

> Jury Instruction No. 9 merely defined the word possession. Pursuant to the instruction, possession could be "actual" or "constructive." Either would suffice to constitute possession. The use of the terms "actual" and "constructive" did not "have the effect of charging an alternative ground for conviction."

In reaching this result, we quoted *Miller v. State,* 2006 WY 17, 127 P.3d 793 (Wyo.2006) in which we distinguished *Bush* and its progeny as follows:

> In the *Bush* line of cases, we held that when a crime may be committed in alternative ways, and the jury is instructed on each alternative and returns a general verdict of guilt, the verdict must be set aside unless sufficient evidence exists to support a finding of guilt as to each alternative. The holding of those cases pertain[s] to elements instructions which quote directly from a criminal statute containing alternative grounds for conviction of the crime charged. For example, *Bush* and *Tanner* [*v. State,* 2002 WY 170, ¶ 8, 57 P.3d 1242 (Wyo.2002)] concerned Wyoming's burglary statute, Wyo. Stat. Ann. § 6–3–301(a) (LexisNexis 2005). In each case, the jury was instructed that it could find the defendant guilty of the crime of burglary if the evidence showed he entered a building without authority with the intent to commit larceny or the intent to commit a felony. Because the evidence was not sufficient to show entry with the intent to commit both larceny and a felony, we reversed the burglary conviction in each case.
>
> The problem that existed in *Bush* and the other cases, however, does not exist in this case. Here, the elements instruction given to the jury on the charged offense did not contain alternative elements upon which Miller's convictions could be based. Miller's jury was only required to determine if the evidence proved Miller delivered a controlled substance to Justin Miller, nothing more. Instruction No. 19 merely defined the term "deliver" and did not have the effect of charging an alterna-

tive ground for conviction. *Bush* and its progeny simply are inapplicable to the definitional instruction given in this case.

*Doherty,* ¶ 15, 131 P.3d at 968, quoting *Miller,* ¶¶ 24–26 (footnote omitted). As stated in *Gabbert v. State,* 2006 WY 108, ¶ 19, 141 P.3d 690, 696 (Wyo.2006), *Bush* does not apply to definitional instructions. The instruction given in Mr. Dettloff's case did not improperly contain alternative elements upon which the jury could convict him.

### 4.  *Uncharged Misconduct Evidence*

[¶ 33] Mr. Dettloff's final claim is that the district court erred in allowing the presentation of evidence of uncharged misconduct. Mr. Dettloff asserts our review of this issue is governed by the abuse of discretion standard. The State contends the plain error standard applies because Mr. Dettloff did not object to the testimony.

[¶ 34] In *Gleason v. State,* 2002 WY 161, ¶ 18, 57 P.3d 332, 340 (Wyo.2002), we said the standard for reviewing rulings under W.R.E. 404(b) generally is abuse of discretion but where the defense fails to object to such evidence at trial the plain error standard applies. More recently, however, we said:

> [W]here a defendant files a pretrial demand for notice of intent to introduce evidence under W.R.E. 404(b), the same shall be treated as the making of a timely objection to the introduction of such evidence. The State must then respond with sufficient information to meet the balance of the *Huddleston* [*v. U.S.,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988)] test adopted in *Vigil* [*v. State,* 926 P.2d 351 (Wyo.1996)] [i.e., the State must justify the evidence as proper under one of the exceptions to character evidence articulated in W.R.E. 404(b) or the general expansion of that rule and demonstrate that the evidence is relevant for the proposed purpose].

*Williams v. State,* 2004 WY 117, ¶ 12, 99 P.3d 432, 439 (Wyo.2004). Thus, in accord with *Williams,* a defendant is not required to object to uncharged misconduct evidence at trial if he has filed a pretrial demand for notice of intent to introduce Rule 404(b) evi-

dence. The rationale for this rule is that "rulings on uncharged misconduct evidence are too important to be made in the heat and pressure of a trial, with the jury twiddling its thumbs in the next room." *Id.,* at 440.

[¶ 35] Mr. Dettloff filed a demand for notice of intent to introduce Rule 404(b) evidence. The State responded with notice of its intent to introduce Rule 404(b) evidence but the notice did not identify the evidence Mr. Dettloff now claims was improperly admitted under the rule. At trial, when the State presented the evidence, Mr. Dettloff did not object.

[¶ 36] The initial question here is whether the challenged evidence actually was uncharged misconduct evidence falling within the confines of Rule 404(b). At trial, the State asked Mr. Freeman, Mr. Dettloff's companion and the driver of the Lincoln, about the events leading up to their arrival at Subway. Mr. Freeman testified he had spent most of the day with D.S. at his house. Mr. Dettloff joined them there around 3:00 p.m. At this point, Mr. Freeman testified as follows:

Q. All right. And after Mr. Dettloff arrived . . ., what did the three of you do?

A. We sat down; we smoked some marijuana; and basically just had some fun. Just chilled and kind of BS'd about the day and what had been going on.

Q. Okay. And where did the marijuana come from?

A. Mr. Dettloff.

Q. And did you see it personally?

A. I did only for the brief moment before it was loaded in the pipe and passed around.

Q. How was he carrying it?

A. It was in a plastic bag in his pocket.

Q. You mean like a—what kind of bag?

A. Just a sandwich baggie.

Q. And it was in his pocket?

A. Yes, sir.

Q. Front pocket?

A. I believe so.

Q. All right. And so all three of you smoked some pot?

A. Uh-huh.

[¶ 37] In closing argument, the State used this testimony as follows:

Mr. Dettloff and his comrades had been smoking marijuana earlier in the day, * * * as Mr. Freeman testified it was marijuana provided by the defendant, which Mr. Freeman testified he saw in a little plastic baggie. * * * [I]t's completely consistent, ladies and gentlemen, with the marijuana found in that pencil case.

Now, even if you did not believe everything that Sterling Freeman testified, why in the world would he testify under oath and admit to what essentially is a crime, why would he do that if it weren't so? Why? Doesn't that fly in the face of your knowledge of human affairs? Is there any reason that he would have to say they had been smoking pot earlier in the day if it didn't happen? So from that, you can deduce that Mr. Dettloff had marijuana in his possession earlier in the day, which is completely consistent with the marijuana found in the pencil case that was at his feet only moments before he entered the Subway.

[¶ 38] Mr. Dettloff claims this testimony concerned uncharged misconduct. He claims its admission was error because the State failed to give notice of its intent to present the testimony and, consequently, no hearing was held in accordance with *Gleason,* 57 P.3d 332. He claims the testimony was prejudicial because: 1) it told the jury Mr. Dettloff provided marijuana to and smoked it with a minor earlier in the day; 2) the State used it to argue Mr. Dettloff's possession of marijuana earlier in the day must mean he possessed it later in the day; and 3) the State's case was not particularly strong and there was no direct evidence connecting Mr. Dettloff with the items found in the Mercedes, but upon hearing he possessed marijuana earlier in the day, the jury would conclude the drugs found in the Mercedes were his.

[¶ 39] W.R.E. 404(b) provides:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in

conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The problem with Mr. Dettloff's claim is that the State did not present Mr. Freeman's testimony as "evidence of other crimes" under Rule 404(b). Rather, the State used the testimony to raise the inference that the marijuana Mr. Dettloff possessed earlier in the day was the same marijuana found in the Mercedes later in the day. The testimony was not evidence of uncharged misconduct and the principles governing Rule 404(b) evidence do not apply.

[¶ 40]   Affirmed.