2010 WY 43

**Christopher Copty LUFTIG,
Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

**No. S–09–0101.**

Supreme Court of Wyoming.

April 15, 2010.

Representing Appellant: Galen Woelk of Aron and Hennig, LLP, Laramie, Wyoming.

Representing Appellee: Bruce A. Salzburg, Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Graham M. Smith, Assistant Attorney General. Argument by Mr. Smith.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶1] Christopher Copty Luftig was convicted of burglary for entering a vehicle with intent to commit larceny. He appeals, claiming the district court committed plain error by allowing the admission of improper testimony about a series of Colorado car thefts for which he pleaded guilty to one count of aggravated motor vehicle theft and that his trial counsel was ineffective.

[¶2] We conclude that, even though some of the testimony about the Colorado crimes was inadmissible, Mr. Luftig has failed to show prejudice to establish plain error. Also, Mr. Luftig has not established that he was denied his constitutional right to effective assistance of trial counsel. Consequently, we affirm.

## ISSUES

[¶3] Mr. Luftig presents the following issues on appeal:

1. Where the District Court properly permitted the introduction of limited 404(b) evidence: Whether the admission of prejudicial, improper and objectionable evidence outside the scope of the District Court's 404(b) ruling was Plain Error.

2. Whether Defense Counsel's conduct was so deficient that Appellant's trial cannot be relied upon as having produced a just result.

The State phrases the issues differently:

I. Did the State's direct examination of Officer Bruce conform with the District Court's pre-trial ruling on the admissibility of evidence related to appellant's Colorado guilty plea?

II. Did plain error occur when hearsay evidence was introduced without objection?

III. Did trial counsel's failure to object to certain evidence constitute ineffective assistance of counsel?

## FACTS

[¶4] During the early morning hours of May 2, 2008, Officer Anthony Johnson of the University of Wyoming Police Department was conducting foot patrol of the UW campus. Around 1:30 a.m., he walked by vehicles parked near a cafeteria and dorm area and noticed an individual inside a Honda Accord. Looking in the passenger side window, Officer Johnson saw a man working in the area of the ignition with a tool. He looked up at the officer, opened the driver's side door and fled. As the man exited the vehicle, the officer noticed his height (between 5'11" and 6'0" tall), build (slender), hair (short, dark brown) and lack of facial hair. He also observed that the man was wearing a waist-length tan jacket with a fleece collar.

[¶5] After his order to stop was ignored, Officer Johnson called for back-up and gave a description of the suspect. A few minutes later, other officers apprehended Mr. Luftig a short distance away. He claimed that he was simply walking home from the bar, but Officer Johnson identified him as the man in the car. The officers examined the car and

discovered the window looked like it had been tampered with and the ignition was broken.

[¶ 6]   The State charged Mr. Luftig with burglary in violation of Wyo. Stat. Ann. § 6–3–301(a) (LexisNexis 2009).[1]   Mr. Luftig defended on the basis that Officer Johnson had incorrectly identified him as the perpetrator. The State gave notice that it intended to offer, pursuant to W.R.E. 404(b), evidence of other bad acts committed by Mr. Luftig to, among other reasons, establish his *modus operandi,* plan and identity.   In particular, the State sought admission of evidence that he broke into "at least two Hondas in Ft. Collins, Colorado" on November 6, 2005, and as a result of those activities eventually pleaded guilty to one count of aggravated motor vehicle theft.   The State maintained that the Colorado crimes were similar to the Laramie crime in that Mr. Luftig broke into Hondas by "jimmying" the windows and then stole the cars by "punching" the ignitions.

[¶ 7]   The evidence offered included copies of the Stipulation and Consent to Deferred Sentence and Statement of Plea Disposition in the Colorado court, the police reports from the case, and testimony from a Fort Collins police officer regarding Mr. Luftig's prior criminal conduct.   The Statement of Plea Disposition indicated that, in exchange for pleading guilty to one count of felony aggravated motor vehicle theft and one count of misdemeanor theft, the prosecution dismissed three other felony counts.   Mr. Luftig objected to the evidence of the Colorado crimes.

[¶ 8]   The district court held a hearing and ultimately ruled that the evidence of Mr. Luftig's Colorado conviction "under similar circumstances" was admissible to show Mr. Luftig's identity, *modus operandi,* and plan. Its decision letter listed the similar circumstances as:

> [T]he same make of car (Honda) was broken into;  the burglar used a tool or tools to damage/remove the ignition switch of the vehicle, thereby allowing for its theft (speaking in the vernacular, the ignition was "punched" in both cases);  both crimes occurred at approximately 2:00 in the morning;  and both involved the burglar entering the vehicle by means of "jimmying" the window.

The district court refused admission of the police reports on the basis of hearsay, but stated that the police officer could testify, "subject to other appropriate objections."

[¶ 9]   At trial, the prosecution called Officer Jeff Bruce of the Fort Collins Police Department to testify about his investigation of a series of car thefts in Fort Collins, which led to Mr. Luftig's arrest and conviction. Officer Bruce testified, mostly without defense objection, about what he had learned from other police officers' reports.   In addition to the November 6, 2005, car thefts which led to Mr. Luftig's conviction, the officer testified about other car thefts and thefts of personal property from cars in Fort Collins.

[¶ 10]   The jury returned a guilty verdict and, after he was sentenced, Mr. Luftig appealed.

## DISCUSSION

### A.   *Evidentiary Error*

[¶ 11]   Mr. Luftig argues the district court erred by allowing admission of prior bad acts evidence in excess of that permitted by its pre-trial ruling.   He also asserts that Officer Bruce's testimony was inadmissible in several other ways, including hearsay, insufficient foundation, etc.   Mr. Luftig acknowledges the plain error standard of review applies because no contemporaneous objections were lodged to the challenged testimony.   "Under the plain error standard, the appellant must show a clear and unequivocal rule of law was violated, the violation clearly appears in the record, and it resulted

---

1.   Section 6–3–301(a) states in relevant part:
   (a) A person is guilty of burglary if, without authority, he enters or remains in a building, occupied structure or vehicle, or separately secured or occupied portion thereof, with intent to commit larceny or a felony therein.

Mr. Luftig was also initially charged with possession of burglar's tools in violation of Wyo. Stat. Ann. § 6–3–304(a) (LexisNexis 2009), but he was not bound over to the district court on that charge.

in denial of a substantial right to [the appellant's] material prejudice." *Granzer v. State*, 2008 WY 118, ¶ 9, 193 P.3d 266, 269 (Wyo. 2008).

[¶ 12] The State called Officer Bruce to testify in its case in chief. He related that on November 8, 2005, he had been assigned to investigate a series of thefts of Honda automobiles in Fort Collins during the early morning hours of November 6, 2005. He testified as to what he had learned about the case from other police officers' reports. He stated that four males, including Mr. Luftig, had traveled from Laramie to attend a party in Fort Collins in a stolen tan Honda Accord. He continued:

Q. And during the course of the evening, were there other vehicles involved in the investigation that were determined to be stolen?

A. Yes.

Q. Can you just describe a little bit about where those vehicles were and how they were stolen?

A. According to witnesses ... they noted a group of males who they recognized from the party. They were standing next to the tan Honda Accord in the parking lot, and it appeared that they were moving items from the tan Honda Accord to a blue Honda Accord. [One of the witnesses] concluded that these parties were likely stealing a car as well as breaking into other cars and stealing items out of them.

Q. Okay. And the tan Honda Accord, you said that the four individuals, which included Christopher Luftig, that vehicle was stolen?

A. Yes.

Q. And that vehicle, did you have an opportunity to get a description of—of that vehicle[?] . . . .

A. The vehicle [was] described in the police report as a tan Honda Accord with a ski rack, according to witnesses and later on Mr. Luftig's friends' statements, that vehicle was recovered by police and ultimately determined to have been stolen from Fort Collins in the previous month.

Q. . . . . Was it determined if that [the tan Honda Accord] was driven by Christopher Luftig and his three other friends from Laramie to Fort Collins?

A. Yes.

Q. And did those friends make any statements about the ignition in it?

[Defense Counsel]: Objection, hearsay, Your Honor.

THE COURT: Sustained.

Q. Okay. Let's go to the other vehicles that were in Fort Collins, actually. Were you able to determine in your investigation the vehicles that actually had been stolen on that night, if there was any damage to those vehicles?

A. After reviewing the police reports, I discovered that a blue Honda Accord had been stolen from that same parking lot in which Mr. Luftig and his friends were seen near a blue Honda Accord that was parked next to the tan Honda Accord at one time. That same vehicle was located several blocks away that same evening by Fort Collins Police, as well as several stolen items that were found in the grass near that vehicle. And those items were later determined to be stolen out of other vehicles in that same vicinity. And as far as the condition of the blue Honda Accord, if memory serves, the ignition had been punched.

Q. Okay. Was there any damage to the window?

A. Not that I recall.

Q. And the—just to make it clear for the jury, the relationship between that vehicle that you are just discussing that the ignition had been punched, what does that have to do with Mr. Luftig?

A. The ignition being punched just indicates that the vehicle was stolen. Mr. Luftig had been seen near a vehicle matching that description ... by witnesses. . . . And that same vehicle was later reported to have been stolen from the same parking lot. . . .

Q. Okay. And were there any other vehicles that had been reported being stolen in Fort Collins on that same night that Mr. Luftig was a suspect in stealing?

A. Yes. On that same evening, another Honda Accord was reported stolen ... a very short distance away from ... where the blue Honda Accord was recovered from. And because of the short distance and the circumstances in totality, Mr. Luftig was considered a strong suspect in that case as well.

Q. What was the condition of that vehicle that was recovered?

A. I'm not sure about that particular vehicle.

Q. Okay. So you are not sure if the ignition had been punched in that vehicle?

A. Not in that specific vehicle.

Q. All right. Were there other vehicles that were stolen?

A. Yes. On or about December 1st of 2005, I learned that two Honda Accords had been recovered in the city of Fort Collins[.] ... A citizen of Fort Collins, on September 24th of this year, had reported his Honda stolen ... and that particular vehicle was located and recovered ... on December 1st. Coincidentally, another vehicle had been recovered in front of this same victim's house on that same day, and that vehicle had been reported stolen from Laramie, Wyoming.

. . . .

Q. Okay. And what was the condition of that vehicle?

A. If memory serves, it had a punched ignition.

Q. Okay. And when we are talking about a punched ignition, could you kind of describe how that—what we're talking about?

A. Generally speaking, when you have a vehicle, just for the sake of argument, if you are going to steal a vehicle you don't have a key for, it's common in auto theft circles to have a screwdriver or some sort of lever to force into the ignition that would allow you to turn it and allow you to have enough force to turn and break that ignition to make the electrical contact and start the engine.

Q. [Were] there any other vehicles that were in there that you investigated in this investigation?

A. On the same evening on November 6th, 200[5], there were four car trespasses that were reported. . . . They were reported in the same area as was the stolen Honda. . . . They were all Honda Accords and Honda Civics, same general type of vehicle.

Q. And do you remember if they had any type of damage done to them?

A. No appreciable damage, because they had just been entered, and it appeared someone may have pried the window or the door jam lightly open to gain entrance.

Q. So the windows had been tampered with?

A. Slightly. On one vehicle, if memory serves, one vehicle had a broken window.

Q. And on these vehicles, were ignitions punched on these vehicles?

A. I don't recall. I don't think so.

Q. Okay. To recap, we have the first blue vehicle—or the tan vehicle that was driven down by the individuals from Laramie to Wyoming [sic] that had been reported stolen?

A. And was recovered by the Fort Collins Police Department.

Q. And that vehicle did not belong to Mr. Luftig?

A. No.

Q. Or any of the other occupants of that vehicle—

A. No.

Q. —that was driven? And we also have a blue vehicle that witnesses saw Mr. Luftig as well as others transporting goods from one vehicle to another?

A. Yes.

. . . .

Q. . . . . And that vehicle had been reported stolen as well?

A. Yes.

Q. And then we have another vehicle that was recovered in Fort Collins that had been stolen from Laramie?

A. Yes.

Q. Okay. And how was that one tied to Mr. Luftig, to the defendant?

A. That particular vehicle just had been dropped off in the same area where another previous auto theft victim lived and had his vehicle stolen from, which coincidentally, was a Honda Accord. The other vehicle ... coincidentally, I learned that it had three parking citations after it was stolen from the University of Wyoming.

Q. That was four. Is that all?

A. Yes.

Q. Okay. All right. And the similarity in these vehicles is, they're all Hondas?

A. Yes.

Q. Okay. And then some of them actually had the ignitions punched out?

A. Yes.

Q. And during your investigation of the theft that occurred when you are first talking about the defendant driving down from Laramie to Fort Collins, about what time of day were those vehicles stolen?

A. As memory serves—well, Fort Collins Police was dispatched to this call initially a little after 2:00 o'clock in the morning on November 6th, 2005, so I presume that this trip down to the party was within a few hours before that time.

Q. So early morning hours?

A. Early morning hours. Yes.

Q. So did this investigation lead to any charges against the defendant in this case?

A. Yes.

Q. Do you know what those charges were?

A. Aggravated motor vehicle theft.

. . . .

Q. What I'm handing you is marked State's Exhibit No. 23. Do you know what that is?

A. It's titled the Stipulation [and] Consent to Defer[red] Sentence. . . .

Q. Okay. And is this deferred sentence where this defendant pled guilty, is that connected to your investigation?

A. Yes, it is.

Q. So that says that he has pled guilty to aggravated motor vehicle theft?

A. Yes.

[¶ 13] Mr. Luftig argues that Officer Bruce's testimony included evidence that was not admitted in the district court's pre-trial 404(b) ruling, including: thefts of vehicles on dates other than November 6, 2005; multiple thefts of personal property from vehicles; transporting stolen vehicles across state lines; and traffic citations on the UW campus. He also claims that much of Officer Bruce's testimony, including that which related evidence allowed by the Rule 404(b) ruling, was subject to objection for various reasons such as hearsay, insufficient foundation, etc.

[¶ 14] The State does not seriously contest Mr. Luftig's assertion that a good deal of Officer Bruce's testimony was inadmissible and, it seems obvious that, in many instances, his testimony consisted of inadmissible hearsay and some of the testimony exceeded the district court's 404(b) evidence ruling. The officer improperly mentioned automobile thefts Mr. Luftig was suspected of committing at times other than those charged in the Colorado case, i.e., involving cars recovered on December 1, 2005. In addition, he testified about thefts of personal property and the UW traffic tickets which also were not included in the evidence the district court had ruled as admissible. Moreover, much of Officer Bruce's testimony was hearsay because he specifically stated that he was repeating what he had learned from other officers' reports, etc. This testimony violated a clear and unequivocal rule of law. The error also clearly appears in the record. Consequently, our focus in determining whether the district court committed plain error is on whether Mr. Luftig was denied a substantial right to his material prejudice.

[¶ 15] We start with what was allowed by the district court's order, keeping in mind that Mr. Luftig does not contest the district court's original 404(b) ruling. The district court ruled that evidence of Mr. Luftig's Colorado conviction for a felony which occurred on November 6, 2005, was admissible.[2] The documents the district court ruled

---

**2.** Because Mr. Luftig testified at trial, his conviction was also admissible under W.R.E. 609(a)(1)

admissible included a recitation of three other felonies that were dismissed in exchange for his guilty plea to the one deferred felony.[3] In addition, it ruled that the aspects of the Colorado crimes which were similar to the Laramie crime, including the facts that the stolen cars were Hondas, they were entered by "jimmying" the windows, the ignitions were punched in order to start the cars, and the crimes occurred in the early morning hours, were admissible. The district court explained that the evidence was allowed under Rule 404(b) to show Mr. Luftig's identity, *modus operandi*, and plan and specifically stated that he would be entitled to a limiting instruction.

[¶ 16] We consider the prejudicial effect of allowing the inadmissible evidence to be heard by the jury in the context of the district court's uncontested pre-trial 404(b) ruling and the other trial evidence. The trial evidence included: Mr. Luftig was apprehended within a very short time after Officer Johnson witnessed the perpetrator in the car; he was apprehended in close proximity to the crime scene; there were many similarities between Mr. Luftig's appearance and Officer Johnson's description of the suspect when he called for backup; Officer Johnson positively identified Mr. Luftig as the perpetrator; Mr. Luftig's prior record of having been involved in automobile thefts in Fort Collins on November 6, 2005, and a subsequent conviction of one count of aggravated automobile theft arising from those activities; and the Colorado crimes involved early morning break-ins through the car windows and theft of Hondas by "punching" the ignitions. The properly admitted evidence was sufficiently strong to overcome any prejudice which the inadmissible evidence may have caused. The district court did not, therefore, commit plain error by allowing the improper evidence to be heard by the jury.

### B. Ineffective Assistance of Counsel

[¶ 17] Mr. Luftig bears the burden of proving that his trial counsel was

to attack his credibility.

**3.** The prosecution did not offer the Statement of Plea Disposition, which referenced the three dismissed felony charges, as evidence at trial. Nevertheless, the evidence was part of the district

ineffective. *Rutti v. State*, 2004 WY 133, ¶¶ 22–23, 100 P.3d 394, 405 (Wyo.2004). In addition, he must demonstrate the existence of a reasonable probability that, absent the deficiency in counsel's performance, the result of the proceedings would have been different. *Id.* Failure to make the required showing of either deficient performance or sufficient prejudice defeats an ineffectiveness claim. *Id. See also, Dettloff v. State*, 2007 WY 29, ¶ 17, 152 P.3d 376, 382 (Wyo.2007); *Hirsch v. State*, 2006 WY 66, ¶ 15, 135 P.3d 586, 594 (Wyo.2006), citing *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). These inquiries involve mixed questions of law and fact. *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2068. Our review, therefore, is *de novo*. *Dettloff*, ¶ 17, 152 P.3d at 382.

When reviewing a claim of ineffective assistance of counsel, the paramount determination is whether, in light of all the circumstances, trial counsel's acts or omissions were outside the wide range of professionally competent assistance. We indulge a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Under the two-prong standard articulated in *Strickland*, to warrant reversal on a claim of ineffective assistance of counsel, an appellant must demonstrate that his counsel failed to render such assistance as would have been offered by a reasonably competent attorney and that counsel's deficiency prejudiced the defense of the case. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."

*Id.*, ¶ 18, 152 P.3d at 382 (internal citations omitted).

court's pre-trial ruling and, consequently, Officer Bruce's discussion of the facts that resulted in those charges fell within the evidence it admitted.

[¶ 18] We do not evaluate counsel's efforts in hindsight, but attempt to "reconstruct the circumstances surrounding the challenged conduct and evaluate the professional efforts from the perspective of counsel at the time." *Sincock v. State*, 2003 WY 115, ¶ 35, 76 P.3d 323, 336 (Wyo.2003). In evaluating counsel's performance, we determine whether his actions could be considered sound trial strategy. *Id.*

[¶ 19] Mr. Luftig strongly criticizes trial counsel's failure to object to Officer Bruce's testimony stating: "[H]e was either asleep, incompetent, or under the false impression that the District Court had somehow admitted the improper evidence."[4] The State asserts that, although defense counsel could have objected to Officer Bruce's testimony, his failure to do so reflected his trial strategy.

[¶ 20] We analyze defense counsel's performance from his perspective at the time of trial. Once the trial court ruled that the Colorado conviction **and** the circumstances surrounding the underlying charges were admissible, defense counsel had to construct his trial strategy to undermine the evidence.

[¶ 21] Defense counsel began his efforts to minimize Mr. Luftig's role in the Colorado case by mentioning it in his opening statement:

Now, you are going to hear about this prior conviction that Mr. Luftig pled to in Fort Collins in 2005. Now, the evidence there is going to show that these were Honda vehicles that were involved. We believe the evidence will ... show that the only reason Mr. Luftig entered into this plea deal is because ... it was a plea bargain, and he was looking at five [sic] potential felonies versus the one he pled to,

just to make it go away. And that's what he did....

Defense counsel was simply informing the jury that Mr. Luftig's guilty plea was a tactical decision and did not necessarily identify him as the car thief.

[¶ 22] To further his efforts to constrain the effect of the Colorado crimes, defense counsel requested an instruction informing the jury about the limited purpose of the testimony. The district court instructed the jury directly after Officer Bruce's testimony as follows:

Ladies and gentlemen, I need to read you a supplementa[l] instruction. I'll do that now. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of the person in order to show that he acted in conformity with the crime or crimes he is presently charged with. The court has admitted evidence that Mr. Luftig previously pleaded guilty on a charge of motor vehicle theft for the limited purpose of attempting to establish Mr. Luftig's identity, modus operandi, knowledge,[5] and plan. You must not and are [prohibited] from considering this evidence [for] any other purpose except the limited purposes for which it was admitted.

[¶ 23] In accordance with the instruction, defense counsel crafted his objections to Officer Bruce's testimony to undermine the limited purposes for which the evidence was admitted. Specifically, defense counsel raised an objection when the prosecutor asked Officer Bruce whether the other males with Mr. Luftig in Fort Collins had made any statements about the ignition. His hearsay objection was sustained, thereby preventing the jury from hearing that Mr. Luftig's friends had singled him out as the person who had actually punched the ignition. Importantly,

---

4. Mr. Luftig argues that defense counsel's failure to object was especially egregious because some of Officer Bruce's testimony included repetition of witness statements indicating they believed Mr. Luftig was "stealing" a car. He claims that this testimony was error per se under *Whiteplume v. State*, 841 P.2d 1332, 1338 (Wyo.1992). The problem with Mr. Luftig's argument is that the *Whiteplume* rule applies when a witness offers an opinion as to the defendant's guilt of the charged crime. Here, the witness was making a

statement about the defendant's possible involvement in a prior bad act.

5. The district court's order allowing the other bad acts evidence did not mention "knowledge" as one of its purposes for admitting the evidence. Nevertheless, the supplemental instruction included "knowledge." Because Mr. Luftig does not specifically argue that adding "knowledge" to the list of purposes in the limiting instruction was improper, we will not discuss it any further.

none of Officer Bruce's testimony identified Mr. Luftig as the person who actually broke into the cars or punched the ignitions.

[¶ 24] Defense counsel's cross examination of Officer Bruce sheds further light on his strategy. His examination emphasized that the officer did not know whether Mr. Luftig had actually punched the ignitions and that Mr. Luftig had never admitted to doing so. Defense counsel also elicited admissions from the officer that Hondas were popular cars to steal and it was common to "punch" the ignitions in order to accomplish the theft. Thus, his cross examination had the effect of showing that stealing Hondas by punching ignitions was not a unique signature crime and there was no proof that it was actually Mr. Luftig who punched the ignitions in the Colorado thefts.

[¶ 25] Defense counsel reiterated these concepts in his closing argument. He stressed that there was no evidence from the Colorado case that Mr. Luftig was the person who actually punched the ignitions and stole the cars and that he simply pleaded guilty to one deferred felony in order to avoid several possible felony convictions. He also reminded the jury that they could consider the evidence of the Colorado crime only for the limited purpose of establishing Mr. Luftig's identity, *modus operandi*, knowledge and plan.

[¶ 26] Mr. Luftig asks us to analyze defense counsel's strategy in hindsight. Such an approach would violate our standard for reviewing defense counsel's performance from his perspective at the time of trial. When we consider trial counsel's performance from the proper perspective, his trial strategy becomes clear. He knew the evidence of the Colorado conviction and the circumstances leading to the underlying charges was going to be part of the trial evidence. If defense counsel had elected to object to Officer Bruce's testimony regarding the evidence the district court had already ruled was admissible, it would only have resulted in the evidence being presented in a different manner and would have accomplished nothing except, perhaps, accentuating the evidence and alienating the jury.

[¶ 27] Mr. Luftig also asserts that defense counsel was ineffective because he told the jury in his opening statement that Mr. Luftig had previously been charged in Colorado with several car theft related felonies pertaining to the events of November 6, 2005, and had pleaded guilty to one count. Mr. Luftig asserts that, because the prosecution did not ultimately offer the Statement of Plea Disposition into evidence, the jury would not have known of the dismissed counts if his counsel had not mentioned it.

[¶ 28] However, the district court's order was not limited to introduction of the Statement of Plea Disposition. The district court also specifically allowed the prosecution to offer evidence of Mr. Luftig's conviction in Colorado of aggravated vehicle theft, the underlying charges and the circumstances which led to those charges. Defense counsel understandably believed that the State would offer the Statement of Plea Disposition at trial and mentioned the other charges in his opening statement to explain that Mr. Luftig pleaded guilty to one deferred felony conviction to avoid several potential felony convictions. His obvious intent was to defuse, as much as possible, the prejudice that would result from that information.

[¶ 29] When viewed in the appropriate light, we cannot say that defense counsel's failure to object to Officer Bruce's testimony about the evidence included in the district court's pre-trial 404(b) ruling was outside the wide range of professionally competent assistance. Defense counsel's actions amounted to sound trial strategy, and Mr. Luftig did not overcome the presumption that his counsel provided the constitutionally guaranteed assistance of counsel.

[¶ 30] Defense counsel's failure to object to Officer Bruce's testimony about acts that were not included in the trial court's 404(b) ruling is, however, a different matter. When the officer mentioned the automobiles recovered on December 1, 2005, etc., he was testifying about matters that were beyond the trial court's pre-trial 404(b) ruling. Defense counsel did not appear to be following a sound trial strategy when he did not object to that evidence and his performance was deficient.

[¶ 31]   Mr. Luftig is not, however, entitled to have his conviction reversed because he has failed to establish that he was prejudiced by his counsel's failure to object to the inadmissible testimony.   As we explained above, the evidence pertaining to the Laramie car theft and Officer Johnson's identification of Mr. Luftig as the man he saw in the burglarized car, together with the properly admissible evidence of his Colorado conviction and circumstances surrounding it, was sufficient to justify a conviction.   Under these circumstances, we are not convinced that had defense counsel objected and succeeded in keeping the improper testimony from the jury, the result of the proceedings would have been different.

[¶ 32]   Affirmed.