2011 WY 4

**Raymond E. ROBISON, III,
Appellant (Defendant),**

**v.**

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. S–10–0050.

Supreme Court of Wyoming.

Jan. 19, 2011.

Representing Appellant: Diane Lozano, State Public Defender; Tina N. Kerin, Appellate Counsel; and David E. Westling, Senior Assistant Appellate Counsel. Argument by Mr. Westling.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Paul S. Rehurek, Senior Assistant Attorney General. Argument by Mr. Rehurek.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

HILL, Justice.

[¶ 1]   On October 5, 2009, Appellant, Raymond E. Robison, III (Robison), was found guilty, after a jury trial, of driving while under the influence of alcohol in violation of Wyo. Stat. Ann. § 31–5–233(b)(ii)(A) (Lexis-Nexis 2007). He committed that offense on November 2, 2008. Robison appeared before the district court on November 9, 2009, for a Sentencing Enhancement Hearing pursuant to Wyo. Stat. Ann. § 31–5–233(e) (fourth or subsequent offense). On January 21, 2010, the district court entered its Sentence and Probation Order. Robison contends that the district court imposed an illegal sentence by considering a prior conviction that occurred outside the five-year time limit set by the governing statute. He also contends that trial counsel's failure to file a motion to suppress evidence obtained in connection with an illegal traffic stop constituted ineffective assistance of counsel and denied him due process of law. We will affirm.

## ISSUES

[¶ 2]   Robison raises these issues:

I.   Did the trial court impose an illegal sentence by considering a conviction outside of the five-year time limit delineated by W.S. § 31–5–233(e) as a fourth or subsequent conviction so as to sentence [Robison] to a felony?

II.   Did the failure of [Robison's] trial counsel to file a motion to suppress evidence based upon an illegal traffic stop constitute ineffective assistance of counsel and deny [him] due process of law?

The State's statement of the issues conforms to that set forth by Robison.

### Ineffective Assistance of Counsel

[¶ 3]   Under the circumstances of this case, the second issue raised by Robison is a threshold issue. If this Court were to conclude that Robison's counsel's assistance was ineffective, then it would require this Court to reverse that conviction. Such a conclusion would then require us to vacate the sentence imposed as well.

[¶ 4]   Robison's arrest was facilitated by a Report Every Drunk Driver Immediately (REDDI) alert that was called into the Gillette Police Department by an employee of the Lariat Café and Sundance Lounge on November 2, 2008. The report was to the effect that a very drunk patron had left that establishment after he was refused service. Police were provided a description of the vehicle Robison was driving. That report was forwarded via dispatch to Gillette Police Officer Mark Kelso. He was near the Sundance Lounge and arrived on the scene as Robison was driving away in the vehicle described in the REDDI report. Officer Kelso

stopped Robison. He ascertained that Robison did not have a driver's license (it was suspended). He also ascertained that Robison was intoxicated and he was placed under arrest for that reason. Officer Kelso did not observe Robison driving in a manner that would have suggested he was an impaired driver. The stop and subsequent arrest was based solely on the REDDI report.

[¶ 5] Robison's contentions with respect to this issue are based on our decision in *McChesney v. State*, 988 P.2d 1071, 1076–77 (Wyo.1999), wherein we held:

> Here, we have the classic anonymous tip—an unidentified voice on the telephone. Because an anonymous tipster's basis of knowledge and veracity are typically unknown, anonymous tips are considered less reliable. *Kaysville City v. Mulcahy*, 943 P.2d 231, 235–36 (Utah App.1997). The tip of an anonymous informant is unlike that of an identified citizen-informant. The latter tips are higher on the reliability scale because an identified informant exposes himself to possible criminal and civil prosecution if the report is false. *Id.;* see *Borgwardt v. State*, 946 P.2d 805, 807 (Wyo. 1997) (citizen informants are presumptively reliable sources of information). Because the anonymous tip in this case is on the low end of the reliability scale, more information is required to raise a reasonable suspicion. *Alabama v. White*, 496 U.S. [325] at 330–31, 110 S.Ct. [2412] at 2416 [110 L.Ed.2d 301 (1990)].
>
> The REDDI tip in the instant case merely recited the color, make, and direction of travel of the McChesney vehicle. These are facts that were available to anyone traveling on I–90 west of Gillette that July morning. Corroboration of this type of information does not increase the reliability of the tip. *State v. Miller*, 510 N.W.2d 638, 642 (N.D.1994); *Pinkney v. State*, 666 So.2d 590, 592 (Fla.App.1996); *Commonwealth v. Lyons*, 409 Mass. 16, 564 N.E.2d 390, 393 (1990); *Campbell v. State of Wash. Dept. of Licensing*, 31 Wash.App. 833, 644 P.2d 1219, 1221 (1982); see 4 Wayne R. LaFave, *Search and Seizure* § 9.4(h), at 222, n. 391–99. Where, as here, the informant makes no prediction of

future behavior indicating "inside information," the investigating officer is required to corroborate the tip in some other fashion, usually by observing either a traffic violation or driving indicative of impairment. *Pinkney v. State*, 666 So.2d at 592.

> This enhanced corroboration requirement stems from a number of legitimate concerns. An anonymous tip, without more, may be no more than a citizen's hunch or merely an assertion based on rumor. In addition, the potential for citizen abuse is readily apparent. Anybody with enough knowledge about a given person to make that person the target of a prank, or to harbor a grudge against that person, will certainly be able to formulate a REDDI tip. See *Alabama v. White*, 496 U.S. at 333, 110 S.Ct. at 2418 (Stevens, J. dissenting). In the law enforcement context, there is the danger that "an officer prompted not by a tip at all, but only by a hunch, could relay a description and license number through the dispatcher and thereby effectuate a lawful stop." *Mix v. State*, 893 P.2d 1270, 1272–73 (Alaska App. 1995).

> In the instant case, any traveler on the highway that morning could have "predicted" the facts contained in the REDDI tip. The tip did not provide a description of the driver, the passengers, or any of their future activities. As such, the tip did not provide any "inside information" that would indicate that the tip was reliable. Even *Alabama v. White* was referred to as a "close case" on its facts. 496 U.S. at 332, 110 S.Ct. at 2417. The facts of this case are far less compelling. Under these circumstances, we hold that the anonymous REDDI report was not sufficient to create a reasonable suspicion to justify an investigatory stop.

> Officer Will properly investigated the REDDI report when he followed McChesney as he exited the interstate, made several turns, and traveled a substantial distance. Officer Will did not observe any erratic or illegal driving. He merely observed the passengers looking back at him and the driver looking into his mirrors. Although we have adopted the doctrine that "even conduct which is wholly lawful

and seemingly innocent may form the basis for a reasonable suspicion that criminal activity is afoot," *State v. Welch*, 873 P.2d 601, 604 (Wyo.1994), we conclude that this conduct did not provide a reasonable suspicion in this case. First, we dismiss the driver's glances in his mirrors as inconsequential; such action is undeniably the sign of a safe driver. Likewise, the glances of the passengers are not sufficient to provide a reasonable suspicion. The district court did not find these glances particularly significant, nor do we. See *State v. Kupihea*, 59 Haw. 386, 581 P.2d 765, 766 (1978) (two passengers in vehicle looked back in direction of police and crouched down, not grounds for stop); *Thomas v. State*, 297 So.2d 850, 852 (Fla. App.1974); *Parker v. State*, 363 So.2d 383, 386 (Fla.App.1978); *Rodriguez v. State*, 578 S.W.2d 419 (Tex.Crim.App.1979). Under these circumstances, we hold that the officer's observations did not provide a reasonable suspicion for an investigatory stop.

Finally, our decision to require independent police corroboration of an anonymous REDDI report appears to be consistent with the practice of law enforcement in this state, which will not make a stop unless police observation confirms either the reported or some other illegal or suspicious activity.

Also see 1 Donald H. Nichols and Flem K. Whited III, *Drinking/Driving Litigation, Criminal and Civil*, § 4:2, pp. 4–142–4–200 (The anonymous tip) (wherein this subject is discussed and cases annotated at length) (2nd ed.2006).

■ [¶ 6] Robison asserts that his defense attorney was ineffective in not filing a motion to suppress the evidence obtained by Officer Kelso during that stop and arrest, on the basis that Kelso was acting on an anonymous tip. As set out more fully above, the tip was not anonymous. The police department received detailed information from a Sundance Lounge employee, who was identified as such to dispatch. Moreover, the vehicle described in that report was observed within minutes, if not seconds, driving away from the Sundance Lounge. The limitations on stops such as those described in *McChesney* are not at issue here.

■ [¶ 7] The standard of review we apply to an effective assistance of counsel issue is this:

[An appellant] bears the burden of proving that his trial counsel was ineffective. *Rutti v. State*, 2004 WY 133, ¶ ¶ 22–23, 100 P.3d 394, 405 (Wyo.2004). In addition, he must demonstrate the existence of a reasonable probability that, absent the deficiency in counsel's performance, the result of the proceedings would have been different. *Id.* Failure to make the required showing of either deficient performance or sufficient prejudice defeats an ineffectiveness claim. *Id.* See also, *Dettloff v. State*, 2007 WY 29, ¶ 17, 152 P.3d 376, 382 (Wyo. 2007); *Hirsch v. State*, 2006 WY 66, ¶ 15, 135 P.3d 586, 594 (Wyo.2006), citing *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). These inquiries involve mixed questions of law and fact. *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2068. Our review, therefore, is de novo. *Dettloff*, ¶ 17, 152 P.3d at 382.

When reviewing a claim of ineffective assistance of counsel, the paramount determination is whether, in light of all the circumstances, trial counsel's acts or omissions were outside the wide range of professionally competent assistance. We indulge a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Under the two-prong standard articulated in *Strickland*, to warrant reversal on a claim of ineffective assistance of counsel, an appellant must demonstrate that his counsel failed to render such assistance as would have been offered by a reasonably competent attorney and that counsel's deficiency prejudiced the defense of the case. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."

*Id.*, ¶ 18, 152 P.3d at 382 (internal citations omitted).

We do not evaluate counsel's efforts in hindsight, but attempt to "reconstruct the circumstances surrounding the challenged conduct and evaluate the professional efforts from the perspective of counsel at the time." *Sincock v. State*, 2003 WY 115, ¶ 35, 76 P.3d 323, 336 (Wyo.2003). In evaluating counsel's performance, we determine whether his actions could be considered sound trial strategy. *Id.*

*Luftig v. State*, 2010 WY 43, ¶¶ 17–18, 228 P.3d 857, 864–65 (Wyo.2010).

[¶ 8] We conclude that Robison's defense attorney was not ineffective under the standard articulated above. Defense counsel's failure to file a motion to suppress, given the facts and circumstances detailed above, does not suggest that counsel was unaware of a potential defense for his client. Rather, it suggests counsel was aware of REDDI report jurisprudence and recognized that his client did not have such a potential defense.

**Illegal Sentence**

■ [¶ 9] Robison asserts that his sentence is illegal because one of the convictions used by the State to prove up four convictions included a "conviction" from the state of Missouri that the State contended became a "conviction" on December 15, 2004, when sentence was finally imposed after his probation, imposed after imposition of sentence was suspended, was revoked on December 15, 2004. The unlawful act of driving under the influence actually occurred on June 16, 2002, and Robison entered a guilty plea based on that act on August 6, 2003. In exchange for his plea, the record reflects that sentencing was suspended pending successful completion of probation. The State's theory is that the guilty plea was not the event that triggered the "conviction," rather it was the sentence imposed after revocation of probation as contemplated by Wyo. Stat. Ann. § 31–7–102(a)(xi)(E) (LexisNexis 2007).

■ [¶ 10] We apply the following standard of review to the issue at hand:

Sentencing decisions are normally within the discretion of the trial court. *Bitz v. State*, 2003 WY 140, ¶ 7, 78 P.3d 257, 259 (Wyo.2003). "Such discretion is limited, however, inasmuch as a court may not enter an illegal sentence. A sentence is illegal if it violates the constitution or other law." *In re CT*, 2006 WY 101, ¶ 8, 140 P.3d 643, 646 (Wyo.2006) (internal case citation omitted). Whether a sentence is illegal is a question of law, which we review de novo. *Manes v. State*, 2007 WY 6, ¶ 7, 150 P.3d 179, 181 (Wyo.2007).

*Jackson v. State*, 2009 WY 82, ¶ 6, 209 P.3d 897, 898–99 (Wyo.2009).

[¶ 11] Wyo. Stat. Ann. § 31–5–233(e) (LexisNexis 2007)[1] provides:

(e) Except as otherwise provided, a person convicted of violating this section shall be ordered to or shall receive a substance abuse assessment conducted by a substance abuse provider certified by the department of health pursuant to W.S. 9–2–2701(c) at or before sentencing. The cost of the substance abuse assessment shall be assessed to and paid by the offender. Except as otherwise provided in this subsection or subsection (h) or (m) of this section, a person convicted of violating this section is guilty of a misdemeanor punishable by imprisonment for not more than six (6) months, a fine of not more than seven hundred fifty dollars ($750.00), or both. On a second offense conviction within five (5) years after a conviction for a violation of this section or other law prohibiting driving while under the influence, he shall be punished by imprisonment for not less than seven (7) days nor more than six (6) months, he shall be ordered to or shall receive a substance abuse assessment conducted by a substance abuse provider certified by the department of health pursuant to W.S. 9–2–2701(c) before sentencing and shall not be eligible for probation or suspension of sentence or release on any other basis until he has served at least seven (7) days in jail. In addition, the person may be fined not less than two hundred dollars ($200.00) nor more than

---

1. This statute was amended effective July 1, 2010, but those amendments do not apply to this case. The amendments changed the five-year time frames to ten-year time frames.

seven hundred fifty dollars ($750.00). On a third offense conviction within five (5) years after a conviction for a violation of this section or other law prohibiting driving while under the influence, he shall be punished by imprisonment for not less than thirty (30) days nor more than six (6) months, shall receive a substance abuse assessment pursuant to W.S. 7–13–1302 and shall not be eligible for probation or suspension of sentence or release on any other basis until he has served at least thirty (30) days in jail except that the court shall consider the substance abuse assessment and may order the person to undergo outpatient alcohol or substance abuse treatment during any mandatory period of incarceration. The minimum period of imprisonment for a third violation shall be mandatory, but the court, having considered the substance abuse assessment and the availability of public and private resources, may suspend up to fifteen (15) days of the mandatory period of imprisonment if, subsequent to the date of the current violation, the offender completes an inpatient treatment program approved by the court. In addition, the person may be fined not less than seven hundred fifty dollars ($750.00) nor more than three thousand dollars ($3,000.00). The judge may suspend part or all of the discretionary portion of an imprisonment sentence under this subsection and place the defendant on probation on condition that the defendant pursues and completes an alcohol education or treatment program as prescribed by the judge. Notwithstanding any other provision of law, the term of probation imposed by a judge under this section may exceed the maximum term of imprisonment established for the offense under this subsection provided the term of probation together with any extension thereof, shall not exceed three (3) years for up to and including a third conviction. *On a fourth or subsequent conviction within five (5) years for a violation of this section or other law prohibiting driving while under the influence, he shall be guilty of a felony and fined not more than ten thousand dollars ($10,000.00), punished by impris-*

*onment for not more than two (2) years, or both.*

[¶ 12] As used in that statute the term "conviction" means:

(xi) "Conviction" means a final conviction and shall include:

(A) An unvacated adjudication of guilt or a determination of a violation in a court of original jurisdiction or an administrative proceeding;

(B) An unvacated forfeiture of bail or collateral deposited to secure the person's appearance in court;

(C) A plea of guilty or nolo contendere accepted by the court;

(D) The payment of a fine or court cost; or

*(E) Violation of a condition of release without bail, regardless of whether the penalty is rebated, suspended or probated.* [Emphasis added.]

Wyo. Stat. Ann. § 31–7–102(a)(xi) (LexisNexis 2007).

[¶ 13] It can be distilled from the foregoing statute that the actual date of the unlawful conduct to be punished, where multiple offenses are being considered, may have nothing to do with determining the five-year period that applies. It is the State's position that Robison was convicted for the instant DUI in violation of § 31–5–233(b)(ii)(A) on October 5, 2009, because that is the only event that is included in the statute that describes the "conviction" that occurred in the immediate case. § 31–7–102(a)(xi)(A). In a Judgment of Conviction entered of record on November 12, 2009, it was determined that Robison had been arrested for driving under the influence, in the state of Missouri, on June 16, 2002. A waiver, plea and judgment were entered on May 22, 2003, but sentence was deferred until December 15, 2004, when Robison's probation was revoked. Hence the five-year counting period began on December 14, 2004. That date of "conviction" is the centerpiece of this case, and the State contends that it is the proper date under the terms of § 31–5–233(b)(ii)(E) (i.e., is the first qualifying conviction). The next occurrences were two DUIs that occurred at 0219 hours on July 7, 2007 and 2345 hours on

July 7, 2007. Judgment in those two cases was entered on November 1, 2007 (they constituted the second and third qualifying convictions). The fourth "conviction" occurred on October 5, 2009. Judgment of conviction for the fourth DUI charge occurred on November 12, 2009. The counting period for that charge was December 14, 2004, until October 5, 2009, a period of less than five years.

[¶ 14] The district court gave close attention to this issue, and after its review of the documentation introduced as evidence by the State at Robison's sentencing hearing, it issued its decision letter concluding that December 14, 2004, was the correct date to begin measuring the five-year period at issue here. After careful review of the record on appeal, we hold that the district court's sentence did not constitute an illegal sentence or a sentence that was otherwise erroneous as a matter of law. In this regard, we note that Robison, and all potential defendants in circumstances such as this, are forewarned that the definitive event constituting a conviction may be any one of the events described in § 31–7–102(a)(xi)(A–E). The statute provides fair warning to those who violate the driving while intoxicated or impaired statutes that such is the case. *Seteren v. State,* 2007 WY 144, ¶¶ 6–8, 167 P.3d 20, 22 (Wyo.2007); also see *McGuire v. Department of Revenue and Taxation,* 809 P.2d 271, 273–75 (Wyo. 1991).

[¶ 15] The record on appeal adequately establishes that Robison was given "a break" with respect to his June 16, 2002 arrest. Missouri has a sentencing provision that is similar to Wyo. Stat. Ann. § 7–13–301 (Lexis-Nexis 2009). See Mo.Rev.Stat. § 557.011 (West 1999). Had Robison successfully fulfilled the terms of his probation, then he might not have been "convicted" as contemplated by § 31–7–102(A)(xi). See *Yale v. City of Independence,* 846 S.W.2d 193, 194–96 (Mo.banc 1993). However, on December 15, 2004, Robison's probation was revoked and sentence was imposed. On that date he was burdened by a "conviction" for the 2002 DUI as the term "conviction" is contemplated by the Wyoming statute.

## CONCLUSION

[¶ 16] The sentence imposed by the district court is affirmed.