2012 WY 13

**Derrick Lee BROCK, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S–11–0108.

Supreme Court of Wyoming.

Feb. 6, 2012.

Representing Appellant: Tamara K. Schroeder, Chapman Valdez, Casper, Wyoming.

Representing Appellee: Gregory A. Phillips, Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Justin A. Daraie, Assistant Attorney General. Argument by Mr. Daraie.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

BURKE, Justice.

[¶ 1] Appellant, Derrick Lee Brock, challenges his conviction of larceny by bailee, in violation of Wyo. Stat. Ann. § 6–3–402(b).[1] He claims his trial attorney's failure to interview or call certain witnesses constituted ineffective assistance of counsel. He also contends the district court improperly limited cross-examination of a prosecution witness. We affirm.

## ISSUES

[¶ 2] Appellant presents the following issues:

1. Was it ineffective assistance of counsel when trial counsel failed to call the investigating police officers to testify with regard to their investigation?

2. Was it ineffective assistance of counsel when trial counsel failed to investigate or interview or call key witnesses with possibly exculpatory information?

3. Did the trial court abuse its discretion in sustaining the prosecution's objection to cross-examination of a witness regarding statements made to the police?

## FACTS

[¶ 3] Appellant was employed as an assistant manager at Johnny J's restaurant in Casper, Wyoming. On June 3 and June 4, 2010, he was the opening manager at the restaurant. As the opening manager, it was Appellant's responsibility to take the previous day's earnings from the restaurant's safe and deposit them at the bank. Only the restaurant manager and assistant managers knew the combination to the safe. On June 3, the restaurant's manager, Court Schusler, who was not on duty that day but who had come in to work to make sure everything was in order, asked Appellant if he wanted him to take the June 2 earnings to the bank. Appellant refused this offer, stating that he would "take care of it."

[¶ 4] Early the next day, the restaurant's bookkeeper noticed that the earnings from June 2 and June 3 had not been deposited in the bank. At 8:50 a.m., the bookkeeper sent an email noting that the deposits had not been made and directing the managers to make sure the earnings were in the restaurant and to deposit the money that day. Appellant sent an email response at 9:59 a.m. that stated "Getting ready to take care of this. Thanks."

[¶ 5] At approximately 9:45 a.m. on the same day, Appellant sent a text message to Jessica Hilliard, an assistant manager at Johnny J's, stating that he had an appointment with his chiropractor and asking Ms.

---

1. Wyo. Stat. Ann. § 6–3–402(b) (LexisNexis 2009) provides as follows:

   § 6–3–402. Larceny; livestock rustling; theft of fuel; penalties.

   . . .

   (b) A bailee, a public servant as defined by W.S. 6–5–101(a)(vi) or any person entrusted with the control, care or custody of any money or other property who, with intent to steal or to deprive the owner of the property, converts the property to his own or another's use is guilty of larceny.

Hilliard to work the remainder of his shift. Before leaving the restaurant, Appellant told Jewell Cole, a restaurant employee and friend of Appellant's, that he was leaving work to go to the chiropractor. Ms. Cole saw Appellant leave the restaurant with a portfolio and two bank bags. Appellant told Audrey Benson, another restaurant employee, that he was leaving to run an errand. Ms. Benson also saw Appellant with a bank bag as he was leaving the restaurant. When Ms. Hilliard arrived at Johnny J's to cover Appellant's shift, the restaurant's co-owner was trying unsuccessfully to contact Appellant on his cell phone. Appellant never returned to work, and the earnings from June 2 and June 3 were never deposited at the bank.

[¶ 6] On Saturday, June 5, Ms. Cole spoke with Appellant on the phone, and informed him that Mr. Schusler wanted to speak with him. When Ms. Cole asked Appellant where he was, Appellant responded that he was "looking at the ocean." Approximately two weeks later, Appellant stopped by Ms. Cole's apartment and, when she asked him about the theft at Johnny J's, Appellant stated that "You can cover anything up that you want to." Ms. Cole also remembered speaking with Appellant at her apartment the day after he was arrested. When Ms. Cole asked Appellant what he was going to do, Appellant laughed and said "I'm going to string it along, and I'll get probation out of it."

[¶ 7] On July 20, 2010, the State filed an Information charging Appellant with one count of larceny, which it later amended to larceny by bailee, in violation of Wyo. Stat. Ann. § 6-3-402(b). Appellant pled not guilty and his case proceeded to trial. On the morning trial was scheduled to begin, the district court held a pretrial hearing to address pending evidentiary issues. At that hearing, defense counsel objected in advance to the introduction of evidence concerning Appellant's rumored gambling problems. The prosecutor advised that he did not intend to present such evidence and had cautioned witnesses not to address the subject during their testimony. The subject of gambling was not mentioned during trial.

[¶ 8] Defense counsel also opposed the introduction of Appellant's recently discovered incriminating statements to Ms. Cole, and requested that the court grant a continuance or prevent the State from introducing those statements. In response, the court ordered the State to make Ms. Cole available that morning for an interview. Ms. Cole was interviewed by the defense that day, and was called as the State's final witness on the second day of trial.

[¶ 9] At the conclusion of the trial, the jury returned a guilty verdict. The court sentenced Appellant to a term of seven to ten years in prison. Appellant timely filed this appeal.

## DISCUSSION

### Ineffective Assistance of Counsel

[¶ 10] In reviewing claims of ineffective assistance of counsel, we apply the test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate, first, that trial counsel's performance was deficient, and second, that the deficient performance prejudiced the defense. *Rodriguez v. State*, 2010 WY 170, ¶ 14, 245 P.3d 818, 823 (Wyo.2010) (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064). "[T]he paramount determination is whether, in light of all the circumstances, trial counsel's acts or omissions were outside the wide range of professionally competent assistance." *Rodriguez*, ¶ 14, 245 P.3d at 823. We invoke a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable judgment. *Id.* "We are reluctant to reverse based upon allegations of ineffective assistance of counsel, and have stated that '[i]n the usual case, ineffective assistance of counsel is going to be demonstrable because of a cumulation of errors with a determination that, in the entire context of the trial, the defendant either was, or was not, denied a right to a fair trial.'" *Proffit v. State*, 2008 WY 114, ¶ 33, 193 P.3d 228, 241 (Wyo.2008) (quoting *Dickeson v. State*, 843 P.2d 606, 612 (Wyo.1992)).

*Failure to Call Investigating Officers*

[¶ 11]  Appellant's first claim of ineffective assistance of counsel is based on his attorney's decision not to call the investigating police officers to testify about their investigation.  Trial counsel's defense theory was that the officers developed a "confirmatory bias" while investigating the crime, which caused the officers to make assumptions about Appellant's guilt without conducting a proper investigation.[2]  Appellant contends that a reasonable attorney pursuing this defense would have attempted to elicit testimony from the officers regarding inconsistencies between the facts set forth in the affidavit of probable cause and the testimony of witnesses at trial.

[¶ 12]  According to Appellant, the following inconsistencies were revealed by the witnesses' testimony: (1) although the affidavit reports that Ms. Cole told Ms. Hilliard on June 4 that she saw Appellant leaving the restaurant with two bank bags, Ms. Hilliard testified that she did not speak with Ms. Cole on June 4; (2) although the affidavit indicates that Appellant left with a bank bag on June 3, Ms. Hilliard testified that she left two bank bags in the safe when she closed the restaurant on June 3; and (3) although the affidavit states that Court Schusler opened the restaurant on June 3, he testified that he was not scheduled to work on June 3 and that he did not tell the investigating officer that he was the opening manager on June 3. Further, Appellant claims that the officer's failure to interview Ms. Cole until after applying for an arrest warrant, as indicated by Ms. Cole's testimony, was further evidence of a confirmatory bias that was inadequately presented by trial counsel's failure to call the investigating officers.  Finally, Appellant claims that the investigating officers may have testified that Appellant's former colleagues believed he had a gambling problem, which, according to Appellant, would have demonstrated that the officers were biased.

[¶ 13]  With regard to trial counsel's decision not to call certain witnesses, we have previously said:

The charge that a defendant was denied effective counsel because his attorney did not call witnesses has often been raised. The decision not to call witnesses is a strategic choice.  *Amin* [*v. State,*] 811 P.2d [255,]  261–62  [ (Wyo.1991) ];  *Laing v. State,* 746 P.2d 1247, 1250 (Wyo.1987).  In order to successfully show ineffective assistance of counsel, the appellant must present the facts about which the proposed witnesses would have testified.  *Campbell* [*v. State,*] 728 P.2d 628 [ (Wyo.1986) ]. The decision whether to call witnesses is normally within the judgment of counsel and will rarely be second-guessed through appellate hindsight.  *State v. Onishi,* 64 Haw. 62, 636 P.2d 742, 744 (1981).

*Eustice v. State,* 11 P.3d 897, 904 (Wyo.2000) (quoting *Hamburg v. State,* 820 P.2d 523, 528 (Wyo.1991)).  Because the officers were not called as witnesses, we are left to speculate as to what their testimony would have been. *See, e.g., Guy v. State,* 2008 WY 56, ¶ 32, 184 P.3d 687, 697 (Wyo.2008).  However, even if we accept Appellant's contention that the officers' testimony would have revealed evidence of a confirmatory bias, Appellant discounts the possibility that their testimony would have been more damaging than helpful to his case.

[¶ 14]  Appellant fails to consider the possibility that the officers would have effectively defended their investigation by emphasizing facts suggesting Appellant's guilt, including the following: (1) it was Appellant's responsibility to take the deposits to the bank on June 4; (2) he sent an email stating that he would "take care of this"; (3) he was seen leaving the restaurant with the bank bags; (4) he never returned to work; and (5) the money was never deposited. Additionally, as indicated above, defense counsel was able to elicit favorable evidence of purported deficiencies in the investigation through cross-examination of other trial witnesses.

[¶ 15]  Finally, trial counsel's effort to preclude evidence of Appellant's rumored gambling problems does not constitute deficient performance.  This evidence had the potential to reflect poorly on Appellant's

---

2.  Appellant does not challenge trial counsel's de-  cision to employ this defense strategy.

character and to provide a possible motive for the crime. In light of these obvious risks, we cannot say that counsel's approach was unreasonable. It is properly viewed as a strategic decision securely within the reasonable judgment of counsel. We will not second guess that decision in this appeal.

*Investigation of Eye–Witnesses*

[¶ 16] Appellant's second claim of ineffective assistance of counsel arises from his attorney's failure to interview Ms. Benson and failure to interview Ms. Cole until the day of trial. Although Appellant claims that "counsel for the defense failed to interview at least two witnesses, one of whom was the key eye witness for the prosecution," he does not identify any other witnesses that counsel should have interviewed, and appears to ignore the fact that an investigator for the defense interviewed Ms. Cole before she testified. Appellant contends that defense counsel's lack of investigation with regard to Ms. Cole and Ms. Benson was presumptively prejudicial.

[¶ 17] We have consistently recognized that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Asch v. State,* 2003 WY 18, ¶ 40, 62 P.3d 945, 958 (Wyo. 2003) (quoting *Frias v. State,* 722 P.2d 135, 145 (Wyo.1986) (emphasis omitted)). With regard to this duty, we have stated that

> Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant.... [W]hat investigation decisions are reasonable depends critically on such information.... *Strickland v. Washington,* 104 S.Ct. at 2066.

The reasonableness of investigation decisions depends on other evidence as well. "[I]n those cases involving claims of inadequate investigation ... consideration [must be given to] the strength of the evidence known to counsel that suggested further inquiry was needed." 2 LaFave & Isr[ae]ll, Crim.Proc. § 11.10(d) at 25 (1986 Pocket Part).

*Asch,* ¶ 40, 62 P.3d at 958. We give similar deference to counsel's investigation decisions as we give to counsel's decision not to call particular witnesses: "This Court assesses counsel's performance by considering all of the circumstances existing at the time counsel made the investigative decision and applies a heavy measure of deference to counsel's judgments in this regard." *Duke v. State,* 2004 WY 120, ¶ 55, 99 P.3d 928, 948 (Wyo.2004) (citing *Asch,* ¶ 41, 62 P.3d at 958–59). Further, we have stated that an appellant cannot prove ineffective assistance of counsel for failure to investigate "where an appellant fails to identify the favorable evidence or witnesses that additional investigation would have revealed." *Asch,* ¶ 41, 62 P.3d at 958–59.

[¶ 18] Although ineffective assistance of counsel is generally demonstrated by a "cumulation of errors," we have previously recognized "single deficiencies in performance that can so prejudice the right of a defendant to a fair trial that [they] will serve to support a conclusion that reasonably effective assistance was not afforded." *King v. State,* 810 P.2d 119, 122 (Wyo.1991) (internal quotation marks omitted). In *King,* the defendant was charged with delivering marijuana to a confidential informant, and the informant was the only witness called by the State at trial. The informant testified that she had bought marijuana from the defendant at the home of the defendant's ex-wife. *Id.* at 120–21. However, the defendant "testified to an entirely different version of events." *Id.* at 121. He stated that the informant had unsuccessfully tried to sell him marijuana as he was working on his car with his brother and several other persons. *Id.* Although conversations between the informant and the defendant were said to have been secretly recorded during the alleged transaction, the recording was "garbled to the point that it was useless as trial evidence." Consequently, "[t]he absence of a mechanical recording made particularly critical the issue of credibility between prosecution and defense witnesses." *Id.* Defense counsel, however, did not subpoena the defendant's brother, "who could have been a very significant witness to address the clear testimonial conflict." *Id.* Further, defense

counsel did not successfully subpoena the defendant's ex-wife, and did not interview her to determine what her testimony might have been. *Id.* Under these circumstances, we held that the defendant was presumptively prejudiced by his attorney's failure to secure the trial testimony of his ex-wife and brother. *Id.* at 122–23.

[¶ 19] Similarly, in *Gist v. State,* 737 P.2d 336, 343 (Wyo.1987), we held that defense counsel's failure to pursue testimony from a "critical" witness constituted ineffective assistance of counsel. In that case, the defendant and his brother were both charged with delivery of marijuana resulting from a single transaction with an undercover police officer. *Id.* at 339. At the defendant's trial, "[t]he only testimony the jury heard was that of the undercover officer." *Id.* The defendant presented no evidence, but argued that his brother was responsible for arranging the sale and attempted to show that the officer was mistaken as to which brother had actually delivered the marijuana. *Id.* After the defendant was convicted, his brother entered into a plea agreement and confessed that he had sold the marijuana to the undercover officer. *Id.* Based on these facts, we held that "The failure to pursue an interview of [the defendant's brother] constituted an abrogation of counsel's duty to [the defendant] to conduct a reasonable investigation and to utilize any information obtained in providing a reasonable defense." *Id.* at 343. Our finding of prejudice was based upon "the critical nature" of the brother's testimony. *Id.*

[¶ 20] The present case is distinguishable from *King* and *Gist.* In this case, trial testimony was received from seven witnesses, five of whom worked at Johnny J's and had direct knowledge of the events on the day of the theft. Their testimony tended to implicate Appellant, not to exculpate him. Indeed, there is no indication in the record that defense counsel received information prior to trial suggesting that any of the witnesses, including Ms. Cole and Ms. Benson, may have possessed exculpatory information. Rather, the affidavit of probable cause, which explained that both Ms. Cole and Ms. Benson had seen Appellant leave Johnny J's with the restaurant's earnings on June 4, indicated that both witnesses would give testimony unfavorable to Appellant.

[¶ 21] Although Appellant attempts to analogize to *King* and *Gist* by referring to Ms. Cole as "the key eye witness for the prosecution," Appellant fails to recognize that a defense investigator interviewed Ms. Cole before the trial began. This interview was prompted by the State's disclosure that the prosecutor's interview with Ms. Cole during the week before trial had revealed incriminating statements made by Appellant. Further, defense counsel was able to effectively cross-examine Ms. Cole at trial, drawing attention to the fact that (1) her earliest interview with a police officer occurred just two weeks prior to trial; (2) she did not personally report that she had seen Appellant walk out of the restaurant with the bank deposits until that interview; (3) she either misreported or inaccurately remembered that the theft occurred on a Saturday; and (4) she did not report Appellant's incriminating statements to the investigating officers or to her employer. In light of these facts, we cannot find that defense counsel's investigation of Ms. Cole and Ms. Benson was presumptively prejudicial.

[¶ 22] The burden is on Appellant to demonstrate ineffective assistance of counsel. *See, e.g., Robison v. State,* 2011 WY 4, ¶ 7, 246 P.3d 259, 262 (Wyo.2011). In order to prevail on such a claim, Appellant must establish that he was prejudiced by the deficient performance. He has failed to satisfy that burden. Appellant has made no attempt to identify the favorable evidence that additional investigation by defense counsel would have revealed. *See Asch,* ¶ 41, 62 P.3d at 958–59. Accordingly, we must reject his claim of ineffective assistance of counsel.

***Exclusion of Witness Testimony***

[¶ 23] In his final issue, Appellant contends that the trial court abused its discretion "in sustaining the prosecution's objection to cross-examination of a witness regarding statements made to the police." We review the district court's evidentiary rulings for an abuse of discretion.

Evidentiary rulings are within the sound discretion of the trial court and include

determinations of the adequacy of foundation and relevancy, competency, materiality, and remoteness of the evidence. This Court will generally accede to the trial court's determination of the admissibility of evidence unless that court clearly abused its discretion. We have described the standard of an abuse of discretion as reaching the question of the reasonableness of the trial court's choice. Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. In the absence of an abuse of discretion, we will not disturb the trial court's determination. The burden is on the defendant to establish such an abuse.

*Edwards v. State*, 2007 WY 146, ¶ 7, 167 P.3d 636, 637 (Wyo.2007).

[¶ 24] The evidentiary ruling, to which Appellant takes exception, occurred during defense counsel's cross-examination of Mr. Schusler. During a series of questions concerning Mr. Schusler's conversations with the investigating officer, defense counsel asked Mr. Schusler whether he recalled telling the officer that he had been the opening manager at Johnny J's on the day before Appellant was seen leaving the restaurant with the bank deposits. After Mr. Schusler testified that he did not tell the officer that he was the opening manager on that day, defense counsel requested permission to approach the witness. The prosecutor objected. During the following exchange, which was held outside the hearing of the jury, the court sustained the prosecutor's objection:

PROSECUTOR: I think what [defense counsel] is attempting to do is show a report which has not been adopted by the witness as his statement in an attempt to impeach Mr. Schusler. This has not been adopted. It is a summary from [the investigating officer]. And I don't believe it's appropriate for this to be used for im-

peachment if it has not been adopted by the [witness] as his statement. It is simply a summary.

DEFENSE COUNSEL: It's a lawful report, Your Honor, of the statements that—

THE COURT: What do you mean, "a lawful report"?

DEFENSE COUNSEL: It was conducted during their investigation. The officer went there. He conducted an interview with Mr. Schusler. He documented in his notes the facts that he was given and then made this report based upon the statements that Mr. Schusler gave. I'm not going to try to impeach Mr. Schusler directly but to show that either the report is inaccurate or that he's mistaken.

THE COURT: I'm going to sustain [the prosecutor's] objection.

Defense counsel then continued his cross-examination of Mr. Schusler.[3]

[¶ 25] In determining whether the district court abused its discretion in denying defense counsel the opportunity to show Mr. Schusler the "report," it is essential that the record clearly identifies the "report" at issue. We are unable to make that identification from the record before us. In the exchange, the document is referred to as "a report," "a summary from [the investigating officer]," and "a lawful report." The document is never specifically identified in the record. In this appeal, Appellant appears to contend that the "report" is an "affidavit."[4] The document is not otherwise identified by Appellant. Because we cannot identify the document at issue, it is impossible for us to conclude that the district court abused its discretion in sustaining the objection.

[¶ 26] Appellant appears to contend that the district court's evidentiary ruling prevented him from pursuing a specific line of questioning. That contention is also unsupported by the record. Appellant has failed to identify any question that defense counsel was prohibited from asking during cross-examination of Mr. Schusler. The rec-

---

3. Defense counsel did not make an offer of proof relating to the document he sought to introduce or the testimony he sought to elicit from Mr. Schusler.

4. Appellant, in his brief, states that defense counsel requested permission to approach Mr. Schusler "presumably to show him the affidavit of [the investigating officer]."

ord reflects that the State did not object to any question posed by defense counsel during the entire cross-examination of Mr. Schusler. During cross-examination, defense counsel was permitted to question Mr. Schusler regarding statements made to the officer. The following exchange is illustrative:

Q. Okay. Now, when you spoke to [the investigating officer] on the 15th—or excuse me—yes, the 15th—you had stated to him that you worked on the 3rd; correct?

A. I did.

Q. Okay. Do you recall telling him that you were the opening manager?

A. No, I don't.

Q. You don't. So if [the investigating officer] had stated that you were the opening manager, would that be correct or incorrect?

A. That would be incorrect. The opening manager was Derrick Brock on the 3rd.

Appellant has failed to establish that he was prevented from asking any specific question during cross-examination of Mr. Schusler, or that the district court abused its discretion in sustaining the prosecutor's objection.

[¶ 27]  Affirmed.