2011 WY 129

**Christopher David HARRELL, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. S–11–0035.**

Supreme Court of Wyoming.

Sept. 16, 2011.

---

**236**

Representing Appellant: Diane M. Lozano, State Public Defender; Tina N. Olson, Appellate Counsel; and Kirk A. Morgan, Senior Assistant Appellate Counsel.

Representing Appellee: Gregory A. Phillips, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Leda M. Pojman, Senior Assistant Attorney General.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

HILL, Justice.

[¶1]   After being convicted of rape, kidnapping, and assault, appellant Christopher Harrell (Harrell) argues on appeal that the district court abused its discretion when it did not allow him to introduce evidence regarding a previous battery charge.  We affirm.

### ISSUE

[¶2]   Harrell presents one issue:

Did the district court err when it denied [Harrell's] request to admit evidence pertaining to a prior arrest, after the State's witness opened the door by mentioning the arrest, in violation of the court's previous order?

### FACTS

[¶3]   Harrell and the victim, GP, began dating in 2009.  In early February of 2010, Harrell moved out of the victim's home after GP obtained a domestic violence protection order against him.  However, the two continued to communicate.

[¶4]   On March 2, 2010, Harrell sent a text message to GP indicating that he was "horny," and for the next hour and a half, the two exchanged text messages.  Before she went to bed, GP decided to pick up Harrell from his friend's house because he had been drinking, and brought him to her home so he could sleep on the couch. After arriving home, GP testified that she and Harrell kissed prior to entering the house, that then she and Harrell began arguing over previous domestic disputes, and the fight escalated. GP testified that Harrell began strangling her, retrieved a hammer and box cutter, and then proceeded to assault and rape her, both vaginally and anally.  According to GP, the assault and rape continued throughout the night and into the morning.

[¶5]   That next morning, the police received an anonymous call that Harrell was at GP's residence and they arrived at the residence where Harrell was arrested for violating the protection order against him.  The case proceeded to trial, and after a jury convicted Harrell of three counts of sexual assault in the first degree, one count of kidnapping, and one count of aggravated assault and battery, he was sentenced to the Wyoming State Penitentiary for a period of not

less than ten nor more than fifty years on each of the three sexual assault convictions, to run consecutively; not less than twenty years nor more than life for the kidnapping conviction, to be served consecutive to the first three; and not less than eight nor more than ten years, for the aggravated assault conviction, to run concurrent to the first sexual assault sentence. This appeal followed.

## DISCUSSION

[¶ 6] Harrell's only issue on appeal is that the district court abused its discretion when it did not allow him to introduce evidence that he had been acquitted of a previous battery charge.

[¶ 7] The standard for reviewing a trial court's rulings on the admissibility of evidence is well known.

Such decisions are within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion. Determining whether the trial court abused its discretion involves the consideration of whether the court could reasonably conclude as it did, and whether it acted in an arbitrary and capricious manner.

A trial court's evidentiary rulings " 'are entitled to considerable deference,' " and will not be reversed on appeal so long as " 'there exists a legitimate basis for the trial court's ruling. . . .' " The appellant bears the burden of proving an abuse of discretion. Even where a trial objection has been made to the admission of evidence, error cannot be found unless "a substantial right of the party is affected. . . ."

*Lancaster v. State*, 2002 WY 45, ¶¶ 11–12, 43 P.3d 80, 87 (Wyo.2002) (internal citations omitted). Also, because Harrell did not contemporaneously object at trial, his complaint is reviewed under the plain error standard. *Luftig v. State*, 2010 WY 43, ¶ 11, 228 P.3d 857, 860–61 (Wyo.2010).

[¶ 8] As briefly as possible, we must summarize a few more procedural facts that are pertinent to the issue before us. Before trial, the district court granted the State permission to elicit testimony that law enforcement went to the victim's house that day because they had been informed that Harrell's truck was parked there, and they knew about the protection order. Harrell was arrested for violating that order. Also, testimony was allowed that the victim, that same day, had requested dismissal of the protection order.

[¶ 9] In regard to the protection order evidence being admitted, defense counsel requested that Harrell be allowed to discuss the *basis* of that protection order. Counsel assumed that the order stemmed from an incident on February 19, 2010, that led to a felony battery charge for which Harrell had just been acquitted. In response to defense counsel's request, the State objected because it was introducing evidence of the protection order only to explain the basis for Harrell's arrest on March 3, 2010. The court ruled it would not permit any testimony about Harrell's earlier battery charge and acquittal, finding both unrelated to the instant case.

[¶ 10] Despite the district court's ruling, during his direct examination, Officer Mahylis testified about his interview of GP after Harrell's arrest:

[Prosecutor]: Did [the victim] describe for you any conversations that were taking place at this point in time between [the] two of them?

[Officer]: He stated to her that he was done, done having her—I don't know if [I] can use the language that was in the report.

[Prosecutor]: Well, did she quote him?

[Officer]: Yeah, she did.

[Prosecutor]: Okay. And what did she say was said?

[Officer]: I believe it was, are you done f* * * *ing with me. And he pushed her back to the bedroom. He also said to her, you are the reason I was put in jail on Friday, which I believe that was the day he was arrested was February 19th. I believe that was a Friday. He was saying to her, you are the reason I went to jail. I believe it was for violating a protection order. I couldn't be positive. She couldn't describe, I just know what she said. He said, you know, you are the reason you put

me, or I was in jail. I am going to make you feel like I felt when I was in jail, as he was pushing her into the back bedroom.

[¶ 11] After the officer completed his testimony and was released from his subpoena, defense counsel complained that his testimony let the jury "know everything" about the February 19, 2010, arrest for battery, except that Harrell had been acquitted. The State disagreed, noting that it had introduced no evidence whatsoever that Harrell had been charged with battery, and that defense counsel could have cross-examined the officer to clarify his direct testimony. Furthermore, the State assured the district court that it had instructed its witnesses not to comment on the February 19th arrest, and that it "jumped in there and moved on with the testimony" to the best of its ability. The district court determined that the State did "its best," and "nothing intentional happened here." Eventually, the district court ruled that Harrell's acquittal of the battery was inadmissible and pointed out that Harrell did not contemporaneously object to the officer's testimony, that the officer was unsure of what exactly prompted the February arrest, and that it would entertain a cautionary instruction regarding the officer's testimony if drafted by defense counsel. The district court summarized:

So, I guess I should observe that this officer opined that perhaps it was a family violence protection order arrest, which of course we know it wasn't. But that is in front of the jury. And we know he was arrested on March 3rd for a family violence protection order. I think it is probably fair to say that the sense the jury has through the evidence is these parties had this, one of these back and forth relationships, with perhaps accusations of violating family violence protection orders. And there [is] evidence in that [GP] at one point went to dismiss it, so I guess what I am trying to say is the jury's understanding is that perhaps the prior arrest was for a family violence protection order violation.

I don't mean to diminish a family violence protection order but it is—they don't have information it was an arrest for battery, which arguably is something of a

heightened degree, inasmuch as the family violence protection is a civil order. Again I don't mean to minimize that at all but in terms of the information the jury has received, it is probably a little less impactful than testimony that there was an arrest for battery. But in any event, I am willing to work with counsel to devise a cautionary instruction.

[¶ 12] Indeed, a curative instruction was developed, and the jury was subsequently instructed as follows:

*Instruction No. 31*

You have heard testimony in this case regarding an arrest prior to March 3, 2010. You are instructed to disregard this testimony entirely in reaching your verdicts in this case.

[¶ 13] Harrell argues that the district court should have allowed him to introduce testimony about his previous acquittal for battery. The record clearly reflects that the district court did not allow Harrell to introduce testimony for his previous arrest. Thus, under a plain error standard of review, we next address whether or not Harrell has shown that a clear rule of law was violated or that he was prejudiced.

[¶ 14] Harrell argues that his sixth amendment right to compulsory process was violated because he was deprived of testimony that was vital, material, and relevant to his defense. He argues that the evidence of his acquittal was relevant in this case for two reasons: First, he contends that "[d]emonstrating that the officer was mistaken," with respect to his belief that Harrell was arrested on February 19, 2010, for violating a protection order rather than a battery, "demonstrates that he was not as careful in his recollection of the event as he purported," and thus Harrell could have used the evidence to impeach the officer's testimony; and second, the district court's denial left the jury with "negative," and to some extent, "inaccurate" information about him. Had he been able to introduce the battery evidence, "it would have alleviated the problem associated with the admissibility of this previously ruled prejudicial and irrelevant 404(b) evidence."

[¶ 15] We do not find Harrell's arguments persuasive. The evidence would not have been proper impeachment evidence because the officer was only relaying what GP had told him. The officer was not himself unclear or unsure—he was only repeating the victim's statement. Also, regarding the impressions left with the jury, the State points out that neither party sought to introduce under W.R.E. 404(b), evidence of the February 19, 2010, arrest for violating a protection order because no such arrest occurred. Inasmuch as we do not find Harrell's arguments persuasive, we do not find a showing of prejudice in this case.

## CONCLUSION

[¶ 16] The district court did not abuse its discretion when it denied Harrell the opportunity to introduce evidence that he had been previously acquitted of battery, and Harrell suffered no prejudice. Affirmed.