**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 28, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CHRISTOPHER HARRELL,

      Petitioner - Appellant,

v.

EDDIE WILSON, Warden, Wyoming
State Penitentiary,

      Respondent – Appellee.

14-8038
(D.C. No. 2:13-CV-00078-NDF)
(D. Wyoming)

**ORDER DENYING**
**CERTIFICATE OF APPEALABILITY**[*]

Before **GORSUCH**, **MURPHY** and **McHUGH**, Circuit Judges.

    Christopher David Harrell requests a certificate of appealability ("COA") to appeal

the district court's denial of his petition for habeas corpus filed pursuant to 28 U.S.C.

---

[*]This order is not binding precedent, except under the doctrines of law of
the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

§ 2254.[1] Having thoroughly considered the relevant law and the record, we deny Mr. Harrell's application for a COA and dismiss this matter.

## I.    BACKGROUND

On August 11, 2010, a jury convicted Mr. Harrell in Wyoming state court of three counts of sexual assault in the first degree, one count of kidnapping, and one count of aggravated assault. *See Harrell v. State*, 261 P.3d 235, 236 (Wyo. 2011). The state trial judge imposed consecutive sentences of ten to fifty years on each of the sexual assault counts; twenty years to life on the kidnapping count, to run consecutively to the sexual assault sentences; and eight to ten years on the aggravated assault count, to run concurrently with the first sexual assault sentence. *Id.*

At trial, the State presented evidence that Mr. Harrell and the victim began dating in 2009, and cohabitated intermittently. In February of 2010, the victim obtained a domestic violence protective order against Mr. Harrell. Unfortunately, the two continued to communicate. *Id.* On March 2, 2010, the victim requested that the protective order be dismissed. *Id.* at 237. That same day, Mr. Harrell sent a text message to the victim, stating he was "horny." After exchanging text messages with Mr. Harrell for the next hour and a half, the victim collected him from his friend's house and brought him to her home. *Id.* at 236. At first, the reunion went well; however, the situation quickly

---

[1]Although Mr. Harrell did not file an application for a certificate of appealability ("COA") with his opening brief, he argues that he is entitled to a COA in the brief itself. Accordingly, we exercise our discretion to treat Mr. Harrell's Notice of Appeal as a request for COA. *See* Fed. R. App. P. 22(b)(2); 10th Cir. R. 22.1(A).

deteriorated. *Id.* The victim testified that Mr. Harrell threatened her with a box cutter and hammer, and proceeded to rape and assault her for the next fifteen hours. *Id.* In response to an anonymous tip, the police arrived at the victim's house the following morning and arrested Mr. Harrell for violating the protective order. *Id.* The State later prosecuted Mr. Harrell for sexual assault, kidnapping, and aggravated assault.

After the jury convicted him on all charges, Mr. Harrell filed a direct appeal in which he raised a single issue: "Did the [trial] court err when it denied [Mr. Harrell's] request to admit evidence pertaining to a prior arrest, after the State's witness opened the door by mentioning the arrest, in violation of the court's previous order?" The Wyoming Supreme Court affirmed Mr. Harrell's conviction. *Id.* at 239.

Mr. Harrell filed a petition for post-conviction relief with the state court. He raised three issues: 1) prosecutorial misconduct; 2) duplicitous charges; and 3) failure to produce exculpatory evidence. The state trial court dismissed the petition, holding that Mr. Harrell's claims were procedurally barred under Wyoming's post-conviction remedies statute. *See* Wyo. Stat. Ann. § 7-14-103(a)(1) (providing that claims that could have been raised on direct appeal are procedurally barred). The Wyoming Supreme Court denied Mr. Harrell's writ seeking review of that decision.

On April 4, 2013, Mr. Harrell filed the current § 2254 petition in the United States District Court for the District of Wyoming, claiming his due process rights were violated due to prosecutorial misconduct, duplicitous charges, and the ineffective assistance of both trial and appellate counsel. The district court denied Mr. Harrell's petition on all

grounds and refused to issue a certificate of appealability (COA). Mr. Harrell timely appealed that decision.

## II. DISCUSSION

Before he can challenge the district court's denial of his habeas corpus petition, Mr. Harrell must first obtain a COA, which we will grant only upon "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(1)(A) & (2). To meet that standard, Mr. Harrell must demonstrate that 'reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). On appeal, Mr. Harrell limits his claim that he has been denied a constitutional right to the issue of whether prosecutorial misconduct denied him due process, and whether his appellate counsel deprived him of effective assistance of counsel by not raising the prosecutorial misconduct issue on direct appeal.

Our consideration of the merits of Mr. Harrell's claim is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The AEDPA provides that where federal habeas claims have been adjudicated on the merits by the state court, the petitioner is entitled to relief only if the state court's resolution "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State

court proceedings." 28 U.S.C. § 2254(d). The Supreme Court has instructed that this is a highly deferential standard. *See Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

Thus, to grant Mr. Harrell a COA, we must conclude that reasonable jurists could debate the district court's decision that he is not entitled to habeas corpus relief under the standards set forth in the AEDPA. *See Dockins v. Hines*, 374 F.3d 935, 937 (10th Cir. 2004). Mr. Harrell contends reasonable jurists could debate whether he has made a substantial showing that his constitutional rights were violated as a result of prosecutorial misconduct. Specifically, he alleges that the prosecutor elicited testimony in violation of a liminal order, knowingly presented false testimony, and intentionally misrepresented the evidence.[2] He further claims that his constitutional right to effective counsel was violated by his appellate counsel's failure to raise the prosecutorial misconduct issue on direct appeal. We are not persuaded that Mr. Harrell is entitled to a COA on any of these grounds.

### A. The Liminal Order and False Testimony

Before trial, the Wyoming court ruled that evidence of an earlier charge against Mr. Harrell for battery of the victim could not be admitted. Although the trial court instructed the parties to inform their witnesses of this ruling, a police officer called by the prosecution included references to Mr. Harrell's prior arrest in his testimony, and also

---

[2]In the district court, the State argued that Mr. Harrell's claims are procedurally barred. We do not address whether the district court correctly determined that they are not, and proceed directly to the merits. *See Revilla v. Gibson*, 283 F.3d 1203, 1211 (10th Cir. 2002) (recognizing our discretion to bypass issues of procedural bar and to reject the claim on the merits).

incorrectly referred to the underlying charge for that arrest as violation of a protective order. *Id.* Defense counsel did not immediately object. After the officer had completed his testimony and been excused, defense counsel raised an objection and sought leave to introduce evidence that Mr. Harrell had been acquitted of the battery charge which prompted the prior arrest. The trial court reminded the prosecutor of the liminal order and admonished him to prepare his witnesses in accordance with it. In response, the prosecutor assured the court he had done so and stated that the officer's reference to the prior arrest had been inadvertent. The trial court accepted the prosecutor's explanation and denied the defense's request to introduce evidence about the battery charge and acquittal. It explained that defense counsel had failed to raise a contemporaneous objection, and that the jury was left with the impression the prior arrest was for violating a protective order, rather than for the more serious charge of battery. The trial court later instructed the jury to disregard the testimony concerning Mr. Harrell's prior arrest.

The same judge who presided at trial decided Mr. Harrell's petition for post-conviction relief. In denying that petition, the judge reaffirmed the finding that the testimony about the prior arrest had been admitted inadvertently.

Mr. Harrell contends the prosecutor intentionally solicited the excluded testimony, including the false testimony about the nature of the charge underlying the prior arrest. He further argues a COA should issue because reasonable jurists could debate whether the trial court's contrary conclusion is based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(2). But Mr. Harrell has pointed us to nothing in the facts

that would raise a substantial question on this issue; the judge did not "plainly misapprehend or misstate the record" in making its finding. *See Byrd v. Workman*, 645 F.3d 1159, 1171-72 (10th Cir. 2011) (internal quotation marks omitted)). Instead, the trial judge considered the record evidence and found the prosecutor had not intentionally solicited the offending testimony. The trial judge was present during the witness's examination, engaged in a colloquy with the prosecutor immediately after defense counsel raised the objection, and was in the best position to assess the prosecutor's credibility. Mr. Harrell's challenge to that finding does not warrant further scrutiny through the issuance of a COA.

### B.       *Misrepresentation of the Evidence*

At trial, the state offered the testimony of two crime lab experts. The first testified that she performed a "presumptive test" on a box cutter Mr. Harrell allegedly used to threaten the victim during the crimes. Although this test indicated that substances on the box cutter might be blood, she did not run a test to confirm the presence of blood because the size of the sample was small and she wanted to preserve it for tests which would provide more detailed evidence. *Id.* From the remaining sample, the crime lab expert took four swabs and sent them for DNA testing by a second crime lab expert. The second expert testified that the tests revealed a large amount of the victim's DNA on the box cutter. According to the expert, the volume of DNA found in the sample made it unlikely its source was perspiration accumulated by the victim holding the knife. *Id.* She testified it was more likely the stain was a bodily fluid such as blood, saliva, or vaginal fluid.

Mr. Harrell argues the prosecutor improperly misrepresented this testimony in opening statement and closing argument. The prosecutor did state during his opening that the crime lab expert "was able to identify that there was some blood on the [box cutter]." However, his closing argument does not misrepresent the evidence as it actually was presented at trial. In closing, the prosecutor discussed the tests run on the box cutter, explaining that the size of the stain on the end of it prevented the crime lab expert from doing "a whole lot of testing with it." The prosecutor then made the statement Mr. Harrell challenges as misleading: that the crime lab expert "was able to develop a presumptive positive that the stain [on the end of the box cutter] was blood." Although the prosecutor did not include the nuances of the first crime lab expert's testimony about the need for a confirming test, his statement in the context of the closing as a whole is not misleading.

The first crime lab expert testified she "performed a presumptive test" for blood on the stain at the end of the box cutter which yielded a positive result. She also explained a presumptive test can establish only that the stain might be blood. Although the prosecutor did not expressly state this qualification in his closing argument, he acknowledged in discussing the DNA results, that the stain on the end of the box cutter might also be saliva or vaginal fluid. To the extent there was any confusion on this issue, the defense effectively dealt with it in its closing by asking the jury to take a close look at the medical report, which "doesn't say that this was presumptively blood. . . . It says a presumptive test indicated the possible presence of blood—possible presence." Our review of the trial transcript does not support a conclusion that reasonable jurists would

-8-

debate whether the prosecutor's challenged statements rendered the trial fundamentally unfair in violation of Mr. Harrell's due process rights.[3]

### III. CONCLUSION

Mr. Harrell has not made a substantial showing that he has been denied a constitutional right, and we DENY his petition for a COA and DISMISS the appeal.

ENTERED FOR THE COURT


Carolyn B. McHugh
Circuit Judge

---

[3]Because we conclude that reasonable jurists would agree that Mr. Harrell has failed to make out a substantial claim that his constitutional rights were violated by prosecutorial misconduct, we also conclude that Mr. Harrell was not deprived of his constitutional right to effective assistance of counsel when his appellate counsel failed to raise the prosecutorial misconduct claim on direct appeal. *See Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999) ("When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, we first examine the merits of the omitted issue. If the omitted issue is meritless, then counsel's failure to raise it does not amount to constitutionally ineffective assistance.").